16 F.3d 1218
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Elizabeth COX, et al., Plaintiffs-Appellants,
v.
TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.
 No. 93-5231.
 United States Court of Appeals, Sixth Circuit.
 Feb. 10, 1994.
 
 Before: KENNEDY and NELSON, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants, Elizabeth Cox, et al., appeal the district court's grant of summary judgment to defendant-appellee, Tennessee Valley Authority ("TVA") on the grounds of res judicata. For the following reasons, we affirm the decision of the district court.
 
 I.
 
 2
 Plaintiffs-appellants, Elizabeth Cox, Tom and Sue Whitt, Kim and Nancy Dees, and Richard and Jean Burger, are homeowners who own four homes bordering the Ocoee River in the Ocoee Estates subdivision in Polk County, Tennessee. Plaintiffs alleged in a June 25, 1992 complaint that TVA operated an upstream dam, Ocoee No. 1, in a negligent manner, which caused their properties to flood in October 1989 and in February, March, and December of 1990. Specifically plaintiffs alleged that for a period of 14 months TVA removed from the dam five turbines which were the only available effective means to lower the reservoir behind the dam to prevent the flooding of plaintiffs' property. Plaintiffs claimed that as a result of the negligent removal of the turbines, and failure to operate the sluice gates, flooding occurred, causing them to sustain losses.
 
 
 3
 TVA filed a motion to dismiss or for summary judgment on the grounds that plaintiffs' action for negligence was barred by the doctrine of res judicata. On February 8, 1991, plaintiffs had previously brought suit against TVA over the same flooding events in Cox v. TVA, No. CIV-1-91-050 (E.D.Tenn. March 2, 1992), aff'd, No. 92-5641 (6th Cir. March 15, 1993) (hereinafter, "Cox I"). In the complaint in Cox I, plaintiffs had alleged that TVA should pay the same damages for the flooding of the same residential property based on an inverse condemnation theory of recovery, arguing that by causing flooding of plaintiffs' properties, TVA had condemned their property for which they should be fully compensated.
 
 
 4
 In its opinion in Cox I, the district court found that plaintiffs had failed to produce evidence on an essential element of their claim--that TVA caused the flooding of their property by its operation of the dam, Ocoee No. 1. Specifically the district court found:
 
 
 5
 In the fall of 1989, the turbines were removed from service for rehabilitation. They had been in service since 1914 or 75 years. All five were returned to service in 1991. The turbines are the primary means of adjusting the headwater level behind Ocoee # 1. With the turbines out of service, only the spillway gates operate to control the headwater level. (Court File No. 25).
 
 
 6
 From September 18, 1989 to October 1, 1989 over six inches of rain fell on the Ocoee watershed from the aftermath of Hurrican Hugo. All five turbines were still in service at this time. With the Ocoee # 1 turbines operating at full capacity, the river level at the gage 1.3 miles upstream from plaintiffs' property in a nonflood situation is approximately 6.3 feet. The river level at the gage upstream of plaintiffs measured 12.86 feet on October 1, 1989. On October 1, the headwater level peaked at 831.8. Without the Ocoee dam, three feet more of water would have gone downstream than otherwise did. The turbines were run and the spillway was opened until the headwater level reached 827.8 (Court File No. 24). Plaintiffs' property allegedly flooded on October 1, 1989.
 
 
 7
 As a result of an unprecedented storm in mid-February, the second alleged flooding of plaintiffs' property occurred on February 16, 1990. The upstream gage recorded a river level of 24.76 feet on February 16, 1990. President Bush declared Polk County, the county in which plaintiffs' property is situated, a disaster area during this period of flooding. (Id.).
 
 
 8
 Unusually heavy rain was also present before the flooding of plaintiffs' property on March 17, 1990. From March 15 to 17, almost five inches of rain fell on the Ocoee watershed. On March 1 and 2, 1.75 inches fell, and on March 8 through 10, 1.5 inches fell. (Id.). The upstream gage recorded a river level of 17.59 feet on March 17, 1990.
 
 
 9
 On December 20 through 23, 4.1 inches fell on the Ocoee watershed. From December 17 to 19, one inch fell. (Id.). The upstream gage recorded a river level of 12.57 feet. Plaintiffs allege that their property flooded in December 24, 1990, shortly after these heavy rains.
 
 
 10
 Plaintiffs have presented no evidence that TVA in the operation of Ocoee # 1 and not these storms, caused the flooding of their property. Plaintiffs merely argue that because Ocoee # 1 was operated so that less storage space was available for flooding rains, TVA is responsible for the flooding that occurred on the plaintiffs' property. In essence, plaintiffs claim TVA is responsible simply because it did not prevent flooding that would have occurred had the dams not been present. TVA, however, is under no duty to reduce flooding. TVA is only responsible for flooding which is a direct result from its actions. See Miller v. United States, 583 F.2d 857 (6th Cir.1978); Ark-Mo Farms, Inc. v. United States, 530 F.2d 1384 (Ct.Cl.1976).
 
 
 11
 Plaintiffs claim that the natural height of the river at the site of their property is below the height of the river when it allegedly flooded on the four occasions at issue. The "natural height" of the river, however, is defined as the height of the river that would result without the interference of any construction such as the dams. The natural height, therefore, is not static. By the very nature of waterways, the level of the Ocoee will rise and fall with the amount of precipitation that falls on the Ocoee watershed. For the river to be raised above its natural height, TVA would have to take some action that would contribute to the amount of water in the river flow to raise the height of the river above what it would have been without such action. Plaintiffs, however, have presented no proof upon which a jury could find that the flooding on their property was a direct result of the operation of Ocoee # 1 by TVA which dumped more water on their property than would have occurred without the dams presence.
 
 
 12
 Because plaintiffs have failed to present sufficient evidence from which a jury could find TVA liable for the flooding of plaintiffs' property, the motion for partial summary judgment as to TVA's liability will be DENIED. TVA's motion for summary judgment will be GRANTED. This case will be DISMISSED WITH PREJUDICE.
 
 
 13
 Cox I, Joint Appendix, pp. 78-80.
 
 
 14
 In the present case (Cox II), in its motion for summary judgment, defendant TVA argued that plaintiffs' action for negligence was barred by the res judicata effect of the earlier adverse judgment in Cox I involving litigation between the same parties over the same flooding events. The district court agreed and on December 11, 1992 granted TVA's motion for summary judgment. The court stated that the judgment in Cox I precluded prosecution of the present action under a negligence theory because this theory could have been raised in the prior litigation in Cox I when plaintiffs sued defendant under an inverse condemnation theory; the negligence claim is thus barred by the claim preclusion branch of res judicata. The court also found that in Cox I it had determined that plaintiffs had failed to establish that TVA was responsible for the flooding that took place on plaintiffs' property, which is an essential element of a negligence claim. Therefore, the present action is also barred by the doctrine of issue preclusion. Plaintiffs filed a timely notice of appeal.
 
 II.
 
 15
 The doctrine of res judicata consists of the two related concepts of claim preclusion and issue preclusion. City of Canton v. Maynard, 766 F.2d 236, 238 (6th Cir.1985); Dodrill v. Ludt, 764 F.2d 442, 443 (6th Cir.1985). Under the claim preclusion branch of res judicata, an earlier final judgment on the merits precludes a party from raising new issues in litigation that should have been advanced in the earlier proceeding. Under the issue preclusion branch of res judicata (traditionally termed "collateral estoppel"), a party is precluded from relitigating issues of fact or law which were necessarily decided in a previous final judgment. Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984); Montana v. United States, 440 U.S. 147, 153 (1979); Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 918 F.2d 658, 660-61 (6th Cir.1990). TVA contends that under the basic principles of both claim preclusion and issue preclusion, the district court's judgment on the merits adverse to plaintiffs in their former action against TVA in Cox I is a complete bar to the present action. We agree.
 
 A. Claim Preclusion
 
 16
 Plaintiffs contend that TVA negligently caused their properties to flood on four different occasions in 1989 and 1990 and that such an action is not barred by the doctrine of claim preclusion even though they previously alleged in Cox I that such flooding constituted an inverse condemnation. Plaintiffs argue that claim preclusion does not apply unless the facts alleged are the same in both suits, and that in Cox I and Cox II the "causes of action" are distinct because inverse condemnation and tort claims have different elements of proof.
 
 
 17
 Plaintiffs cite no authority for this position, which is a misstatement of the law. The law is clear that successive suits involving the same alleged injury or transaction are barred when the legal theories raised in the second action could have been raised in the first, whether or not the elements of proof are the same. As the Supreme Court stated, the claim preclusion branch of res judicata prevents litigation of all grounds for recovery previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. Res Judicata is a bar " 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' "[1] Nevada v. United States, 463 U.S. 110, 129-30 (1983); See also Cemer v. Marathon Oil Co., 583 F.2d 830, 832 (6th Cir.1978) (judgment against plaintiff on claim that employment discharge violated Age Discrimination in Employment Act barred second suit claiming that same discharge breached employment contract); Hart v. Yamaha-Parts Distributors, Inc., 787 F.2d 1468, 1470 (11th Cir.1986) (dismissal of tort suit arising out of motorcycle accident precluded second action claiming that same accident resulted from breach of warranty); Hagee v. City of Evanston, 729 F.2d 510, 514-15 (7th Cir.1984) (final judgment in suit seeking to enjoin city from stopping completion of construction project precluded second suit for damages after construction was stopped); Dowd v. Society of St. Columbans, 861 F.2d 761, 763-64 (1st Cir.1988) (judgment dismissing suit for breach of contract based on alleged failure to care for missionary during illness was res judicata of second suit claiming that negligence during illness led to permanent disability).
 
 
 18
 In the present case, it is undisputed that both the inverse condemnation action in Cox I and the negligence action in Cox II arose out of the same flooding events and involve the same parties. Plaintiffs contend that in the suit for negligence in Cox II, they are asserting a new fact--the removal of the turbines, which was not included in the complaint in the inverse condemnation action in Cox I because at that time they were unaware that the turbines had been removed. This argument has no merit. Even though plaintiffs in their prior inverse condemnation suit in Cox I did not include the removal of the turbines as the cause of the flooding in their complaint, they argued that the removal was in part the cause before the district court (See Joint Appendix, p. 78). Plaintiffs clearly became aware of the removal of the turbines in the process of discovery in Cox I and should have moved to amend their complaint if they believed the removal constituted negligence. Plaintiffs were obligated to raise the negligence theory as well as the inverse condemnation theory in the prior lawsuit because under both theories they were alleging that TVA was not operating the dam as it should have been operated. The district court's judgment in Cox I adverse to plaintiffs' claim that TVA inversely condemned their property is therefore a bar to the present suit alleging that TVA negligently caused the same flooding events, because this claim could have been raised previously.
 
 B. Issue Preclusion
 
 19
 Plaintiffs contend, again without any legal support, that the doctrine of issue preclusion does not apply because plaintiffs have raised some factual issues in the present case which were not raised in the prior action, such as the foreseeability of the rain storms that occurred at the time of the flooding.
 
 
 20
 However, this argument is beside the point. The doctrine of collateral estoppel or issue preclusion precludes relitigation of factual issues which were raised and decided in prior actions. Montana v. United States, 440 U.S. 147, 162-64 (1979); United States v. Uselton, 927 F.2d 905, 907 (6th Cir.1991). In their inverse condemnation action in Cox I, plaintiffs argued that TVA caused flooding on their properties on four specific occasions. In its opinion in Cox I, the district court determined that plaintiffs "presented no evidence that TVA in the operation of Ocoee # 1 and not these storms caused the flooding of their property." It is this issue--the cause of the flooding on these four occasions--that plaintiffs are estopped from relitigating in the present case. As the district court pointed out, "this court [in Cox I ] granted defendant's motion for summary judgment and dismissed the case with prejudice because the plaintiffs had produced no evidence that TVA caused the flooding of its property by its operation of Ocoee # 1." Joint Appendix, p. 14. Because proximate cause is a critical element of a negligence claim and plaintiffs are precluded from relitigating this issue which was decided against them in Cox I, the present suit is barred by the doctrine of collateral estoppel or issue preclusion.
 
 
 21
 The decision of the district court is hereby AFFIRMED. This suit is barred by the doctrine of res judicata both in regard to claim preclusion and issue preclusion.
 
 
 
 [1]
 It is well established that for res judicata purposes, summary judgment constitutes a final judgment on the merits. Mayer v. Distel Tool & Mach. Co., 556 F.2d 798 (6th Cir.1977)