**Dennis DUBUC, Plaintiff,**

v.

**GREEN OAK TOWNSHIP, Green Oak Township Zoning Board of Appeals, Dale Brewer, Raymond Clevenger, and Estate of Michael Vallie, Defendants.**

No. 91–CV–77206–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 31, 2000.

Robert D. Horvath, Troy, MI, Hugh M. Davis, Jr., Detroit, MI, for Plaintiff.

Raymond F. Clevenger, Ann Arbor, MI, Stuart Trager, Salamey Assoc., Dearborn, MI, Gail P. Massad, Cummings, McClorey, Livonia, MI, Michael E. Rosati, Johnson, Rosati, Farmington Hills, MI, Owen J. Cummings, Cummings, McClorey, Pontiac, MI, for Defendants.

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION FOR INTERIM ATTORNEYS' FEES; (2) DENYING PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT; (3) DENYING PLAINTIFF'S MOTION TO REINSTATE EQUAL PROTECTION CLAIM; (4) GRANTING IN PART DEFENDANTS' MOTION ASSERTING LEGAL DEFENSES; AND (5) DISMISSING THE COMPLAINT WITH PREJUDICE AS BARRED BY CLAIM PRECLUSION**

BORMAN, District Judge.

### INTRODUCTION

This dispute over land use between the landowner and the Township where the land is located has been the subject of numerous lawsuits and administrative proceedings in the Michigan courts, a Michigan administrative agency, and this Court. The federal proceeding was filed over nine years ago. The case was originally assigned to United States District Judge Stewart A. Newblatt, who retired from the bench in August, 1997. The case was then transferred to the undersigned judge.

From September 25, 1998 until April 18, 2000, the federal action was stayed while the parties completed several pending state court cases. This Court lifted the stay upon notification that state court proceedings had terminated. Plaintiff then filed several motions, three of which remain before the Court.

In addition, in 1997, Defendant had filed with the predecessor judge a motion "asserting legal defenses." Defendant filed this motion on the eve of trial, at the Court's direction. Specifically, on June 5, 1997, the Court directed Defendants to file a motion asserting any defenses that could be resolved before trial. The judge then presiding over the case retired, with Defendants' motion still pending and no trial having been held. The stay referred to above was entered without this motion having been ruled on, and the motion is now ripe for decision.

The Court heard oral argument on all pending motions on July 21, 2000. Having now considered the entire record in this case, the Court, for the reasons that follow, DENIES Plaintiff's Motions (1) for interim attorneys' fees, (2) for leave to amend the complaint, and (3) for reinstatement of his equal protection claim. The Court GRANTS in part Defendants' Motion Asserting Legal Defenses, holding that this action is completely barred by claim preclusion, and therefore DISMISSES the complaint, with prejudice and without costs to any party.

## I. FACTS

### A. Procedural Posture

This is a dispute between a landowner and Green Oak Township over the use of a four-acre parcel owned and developed by the Plaintiff. The dispute dates to at least 1985, and has been the subject of extensive litigation in the Michigan state courts and this Court. In September, 1998, the Court stayed the proceedings in the federal case pending the outcome of all the state court proceedings. The Michigan Supreme Court denied leave to appeal in the last of Plaintiff's state court cases by summary order on November 29, 1999. *See Dubuc v. Green Oak Township*, 604 N.W.2d 679 (Mich.1999). Following the Supreme Court decision, this Court granted Plaintiff's motion to lift the stay, in an order dated April 18, 2000. Now pending before the Court are four motions, three by Plaintiff and one by Defendants.

Plaintiff moves for leave to file a second amended complaint, for an interim award of attorney's fees, and for the reinstatement of his equal protection claim previously dismissed by the Court. Defendant moves for summary judgment, on various theories, including qualified or absolute immunity for various defendants, as well as claim preclusion and issue preclusion.

### B. The Underlying Land Use Dispute(s) & State Court Litigation

This summary of the land use dispute is based on the history contained in the Michigan Court of Appeals decision, *Dubuc v. Green Oak Township*, Nos. 138574, 154510, and 158665 (June 13, 1995) (unpublished disposition).

Plaintiff owns approximately four acres of land divided into two parcels, N & S, in Green Oak Township. Plaintiff constructed a one-story, light industrial building, N–1, on the northern parcel. In October, 1985, Plaintiff began construction of a second storage building, N–2, on the same parcel, without first obtaining a building permit from the township. Defendants therefore issued a work-stop order, and denied a building permit because the structure violated the one hundred foot setback requirement for industrial buildings adjacent to residentially zoned areas. As a result of that denial, Plaintiff instituted an action in Livingston County Circuit Court, No. 85–8102, (hereinafter, *"Dubuc I"*) seeking a variance from the setback requirement. That action resulted in a consent judgment entered on May 21, 1986. *Id.*, slip op. at 2 & n. 1.

The consent judgment in Dubuc I resulted in the issuance of a building permit for building N–2, contingent on Plaintiff's compliance with relevant township construction and building codes, local zoning ordinances, and the revised site plan submitted after construction was begun.

Plaintiff subsequently completed building N–2, and another building, N–3. He applied for certificates of use and occupancy for both buildings, which the Township denied after an inspection in February, 1987. The township accordingly ordered Plaintiff and his tenants to vacate building N–3. The certificates for N–3 were denied because, in the opinion of the township building administrator and fire chief, the building did not comply with the fire and safety requirements of the building codes, and was not constructed in conformity with the approved site plan. The township also denied certificates for building N–2, because it was not constructed in accordance with the consent judgment entered in Dubuc I, there being numerous violations of various building and construction codes, which the consent judgment specifically bound Plaintiff to observe.

Plaintiff refused to vacate either building, and filed a second law suit in Livingston County Circuit Court, No. 88–9402 ("Dubuc II"), alleging violations of 42 U.S.C. § 1983, as well as violations of the Michigan Constitution 1963, and several state common law torts. Because Plaintiff twice amended his complaint in this action, and filed at least two motions seeking disqualification of the trial judge (both of which were denied), little happened on that case until December, 1991. The trial court set a status conference for December 6, at which Plaintiff and his counsel failed to appear. The Court adjourned the hearing until December 9. A hearing on pending motions was then scheduled for December 18, at which Plaintiff again failed to appear. The Court therefore sua sponte ordered Plaintiff's counsel to appear on December 23 and show cause why the case should not be dismissed and sanctions awarded to Defendants for the December 6 and 18 absences.

At the show cause hearing, the Court ordered Plaintiff to pay sanctions of $2,000 to the township and $1,000 to the County and its attorneys. The Court ordered the sanctions to be paid within fifteen days, failing which the case would be dismissed with prejudice. Plaintiff failed to pay the sanctions by the Court's deadline, and failed to object to the proposed order drafted by the Defendants regarding the sanctions and dismissal. On January 10, 1992, the trial court entered that order, dismissing Dubuc II with prejudice. At the time of the dismissal, Plaintiff had pending a motion to file a third amended complaint to add a claim of first amendment violations based on the same facts already alleged. The Court in Dubuc II never ruled on that motion, which was rendered moot by the dismissal. Plaintiff's motions for reconsideration failed, and in a per curiam order, the Court of Appeals affirmed the dismissal.

During the pendency of Dubuc II, Plaintiff sought a building permit from the Township to construct another building, S–2, on the southern parcel of his land. The township denied the permit, because the approved site plan had expired, the building dimensions differed from those on the approved site plan in any event, and the work site did not conform to the site plan. Plaintiff instituted a mandamus action challenging the denial in Livingston County Circuit Court, No. 89–10022 ("Dubuc III"). Defendants filed a counterclaim, seeking to enforce the 1986 consent judgment, a contempt finding against the Plaintiff for failing to bring buildings N–2 and N–3 up to code, and damages. The trial court denied Plaintiff's mandamus action, and granted summary judgment to Defendants on their counterclaim. The trial court concluded that Plaintiff had no legal right to the issuance of a building permit, and the township had no obligation to issue one. After another failed motion for reconsideration, Plaintiff appealed. The appeal from Dubuc III was consolidated with the appeal from Dubuc II. The Court of Appeals affirmed both judgments in its June 13, 1995 order.

Meanwhile, Dubuc filed yet another suit, No. 92–012517 ("Dubuc IV"), in Livingston County Circuit Court. This suit

arose from work Plaintiff completed on the roof of the N–2 building in 1991. The township, when it became aware the work was underway in April, 1991, requested that Plaintiff seek a building permit and submit engineered drawings for the work. Plaintiff, contending that the work was repair work that did not necessitate those procedures, refused to comply. In November, 1992, Plaintiff evicted one tenant from N–2, and attempted to relocate four tenants from another building on the property into the vacated space in N–2. The Township, citing Plaintiff's failure to conform to the city building codes, refused to issue certificates of occupancy for these tenants. The Township wrote to the Plaintiff on December 2, stating what would be required for the certificates to issue. On December 7, Plaintiff responded by letter, stating that he did not believe he had to follow those procedures. The next day, he filed *Dubuc IV,* seeking a writ of mandamus compelling the issuance of certificates of use and occupancy.

In January, 1993, the Township moved for and was granted an ex parte TRO, forbidding Plaintiff or those acting at his direction from doing any construction, alteration or building work on the N–2 building. The TRO was eventually converted to a preliminary injunction on August 31, 1993, after several hearings.

Plaintiff moved, unsuccessfully, to disqualify the trial judge. That motion, and unsuccessful appeals from its denial, delayed the trial on Dubuc IV until September, 1995. During this delay in the state proceedings on Dubuc IV, Plaintiff was seeking relief in this Court. Despite the pendency of the state court proceedings, Judge Newblatt issued a preliminary injunction in November, 1994, requiring the Township to issue a certificate of occupancy for N–2, provided that Plaintiff complied with certain requirements.

In November, 1995, the trial court in Dubuc IV denied the request for mandamus, finding it frivolous, and also found Plaintiff in contempt of the 1986 consent judgment, the January, 1993 TRO, and the August, 1993 preliminary injunction. The Court of Appeals affirmed by unpublished order dated January 5, 1999. The Supreme Court denied leave to appeal by summary order on November 29, 1999. Plaintiff filed a motion for reconsideration of that denial, and Defendants filed a motion in the Supreme Court for sanctions.

In a published decision, the Michigan Supreme Court denied the motion for reconsideration, and granted the motion for sanctions. Justice Corrigan, joined by Chief Justice Weaver and Justice Kelly, filed a concurring opinion in which she excoriated the Plaintiff for "vexatious tactics that have led to years of abusive litigation," and invited the trial court to "consider extraordinary sanctions" to deter Plaintiff from continuing those tactics. *See Dubuc v. Green Oak Township,* 609 N.W.2d 829 (Mich. May 5, 2000) (opinion of Corrigan, J.). With the exception of the remand to fix the amount of sanctions, Plaintiff's state court litigation appears to be at an end.

## C. The Federal Case

Plaintiff originally filed suit in this Court in May, 1991. In December, 1992, Judge Newblatt granted in part and denied in part Defendants' motion for summary judgment. Plaintiff's original complaint alleged, *inter alia,* that the township denied his application for a lot split. This denial, Plaintiff contended, was a taking without just compensation, in violation of the Fifth Amendment. Finding that Plaintiff had not exhausted state judicial remedies on that claim, and that the claim was therefore not ripe for federal adjudication, Judge Newblatt dismissed that claim. He also found that Plaintiff had failed to state a claim of substantive due process violations, and dismissed those claims. Judge Newblatt left standing Plaintiff's claims that the Defendant township and its officials had violated his first amendment rights and 42 U.S.C. § 1983, specifically concluding that Plaintiff had properly al-

leged the elements of a claim for municipal liability under that statute. *See Dubuc v. Green Oak Township*, 810 F.Supp. 867 (E.D.Mich.1992).

Plaintiff received leave to file an amended complaint in February, 1993. The amended complaint, dated January 4, 1992, was apparently not entered on the Court's docket until August, 1994.

Beginning in late 1993, Plaintiff filed a series of motions seeking injunctive relief. Judge Newblatt granted an injunction in part, by order dated November 9, 1994. The injunction ordered the township to issue certificates of occupancy for Plaintiff's buildings, subject to Plaintiff's compliance with seven detailed conditions laid down by the Court. Those conditions were drawn from the Defendants' brief. After the issuance of this injunction, Plaintiff filed several more requests for further injunctive relief and sanctions against the Defendants. In an order dated January 26, 1996, Judge Newblatt denied all the pending motions for injunctive relief, dissolved the prior injunction he had issued, and forbade Plaintiff from filing any further requests for injunctive relief, characterizing Plaintiff's entire campaign for injunctive relief (including the request previously granted) as an improper form of collateral attack on the orders of Livingston County Circuit Judge Burress.

The parties filed cross-motions for summary judgment in late March, 1996. In September, 1997, Judge Newblatt ruled on those motions. He denied Plaintiff's motion for summary judgment. As to Plaintiff's First Amendment claim that the Township acted against him in retaliation for his previous court action against it (specifically, *Dubuc I* ), Judge Newblatt found that there were issues of fact as to whether Township officials had the retaliatory animus that was a necessary element of Plaintiff's claim. *Dubuc v. Green Oak Township*, 958 F.Supp. 1231, 1234–35 (E.D.Mich.1997).

Plaintiff's complaint also alleges violations of his equal protection rights, claiming he was a class of one against whom the Township selectively enforced its building codes, in retaliation for his exercise of his First Amendment right to sue the Defendants, and without any rational relation to a legitimate governmental purpose. Judge Newblatt dismissed the "class of one" claim.

The case was ready for trial, and a jury had been chosen but not sworn, in mid–1997. No trial was actually held, however, as Judge Newblatt dismissed the jury and retired from the bench in August, 1997. The case was then transferred here by order of October 7, 1997. There followed eleven more months of contentious discovery. In September, 1998, on Defendants' motion, the Court stayed the proceedings here pending the outcome of state court litigation. With the exception of a single emergency motion for a de bene esse deposition, there was no further action on the case until the stay was recently lifted.

## II. PLAINTIFF'S MOTION FOR INTERIM ATTORNEYS' FEES

On the basis of Judge Newblatt's preliminary injunction issued in November, 1994, Plaintiff moves for an interim award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### A. The Legal Standard

In an action brought under 42 U.S.C. § 1983, a "prevailing party" is entitled to an award of attorneys' fees. 42 U.S.C. § 1988. While ordinarily the Court cannot determine a party's status as a "prevailing party" before final judgment, there are circumstances where an interim determination—and an interlocutory fee award— may be made. *See Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). In *Hanrahan*, the plaintiff lost in the district court on summary judgment. The Seventh Circuit reversed and remanded the cause for trial,

and also ordered interim attorneys' fees. The Supreme Court granted certiorari on the interim fee award, and reversed it.

In so ruling, the Court held that Congress had, in passing § 1988, "contemplated the award of fees *pendente lite* in some cases." 446 U.S. at 757, 100 S.Ct. 1987. Reviewing the legislative history, the Court held that an interim fee award is permitted "only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been determination of the substantial rights of the parties." *Id.* at 757–58, 100 S.Ct. 1987. The Court held that the plaintiffs' success in that case—reversal of summary judgment for their opponents—did not meet that standard.

The Sixth Circuit has elaborated on the *Hanrahan* standard in cases where a party obtains preliminary but not yet permanent injunctive relief. *See Webster v. Sowders*, 846 F.2d 1032 (6th Cir.1988). In *Webster*, Kentucky prison inmates brought suit under § 1983, alleging that their exposure to asbestos in prison was cruel and unusual punishment. They sought and received a temporary restraining order, and subsequently a preliminary injunction preventing the defendants from taking any action with respect to asbestos insulation in the prison. The district court awarded interim attorneys' fees to the plaintiffs. The Sixth Circuit reversed the fee award. 846 F.2d at 1036.

The Court of Appeals held that to be entitled to prevailing party status (and thus a fee award) on the basis of preliminary injunctive relief, the injunction (or TRO) "must represent an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff." 846 F.2d at 1036. The latter type of injunctive relief represents mere procedural success that does not qualify a plaintiff as a pre-

vailing party. *Id.* Deciding which type of injunction is involved in a particular case "often requires a close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief." *Id.* In *Webster* itself, the district court had stated that the plaintiffs' likelihood of success on the merits was "very great." Nonetheless, the Sixth Circuit held that the injunction granted there was of the "procedural" variety. *Id.* at 1037.[1]

In this case, then, the Court must determine the nature of the injunctive relief granted by Judge Newblatt. If it is of the procedural variety, then the Plaintiff is not entitled to a fee award. If, on the other hand, the injunction was "an unambiguous indication of probable success on the merits," the Court should grant the fees.

## B. The November, 1994, Injunction Was Procedural

Plaintiff filed at least three motions seeking to enjoin the Township to issue certificates of occupancy on his property. *See* Nov. 9, 1994 Order, at 1–2 (detailing procedural history). After hearing testimony from agents of the Michigan Bureau of Construction Codes that the property was safe for occupancy, and the testimony of the Township's official to the contrary, the Court credited the state officials' testimony, finding the Township official to be tainted by personal animus toward the Plaintiff. Order at 2–3. The Court therefore ordered the Township to issue a temporary certificate of occupancy, subject to Plaintiff fully and timely complying with seven conditions set forth by the Court. *Id.* at 3–5. After setting forth the seven conditions, the Court reiterated that it "would not order that a certificate of occupancy be issued in this case without the accompanying plan to bring plaintiff within full compliance with the construction code

---

1. The Court also discussed whether the plaintiffs might be entitled to a fee award under a catalyst theory—i.e., that the suit itself forced the Defendants to take voluntary action of the kind sought in the suit. Plaintiff advances no such theory here.

within a limited and determinate amount of time."

On its face, the injunction does not clearly fall into either of the categories identified by *Webster*. First, the order makes no explicit reference to the familiar four factors—likelihood of success on the merits, threat of irreparable harm to plaintiff, potential harm to party enjoined, and public interest—that a district court is to balance in deciding whether to issue injunctive relief. Second, it is possible to draw conflicting inferences from the opinion about how the Court balanced those factors. On the one hand, it could be reasoned that, by disbelieving the Township official's testimony about the buildings' fitness for occupancy, the Court was indicating that Plaintiff had a strong likelihood of success on the merits in proving a retaliatory animus on the part of Township officials. On the other hand, one could infer from the strict conditions imposed on the Plaintiff, that the Court was unwilling to order injunctive relief until Plaintiff proved to the Township's satisfaction that the buildings were up to code. Because the Township has at no point in this litigation or prior to it required more than that from the Plaintiff, the injunction could be seen as a success for the Township on the merits.

Given these competing inferences, it would be difficult for the Court to read the injunction as "an unambiguous indication of probable success on the merits." *Webster*, 846 F.2d at 1036. The Court's January 29, 1996 order dissolving the injunction removes all doubt, however. In that order, the Court stated:

> on prior occasions, the Court held the belief that the relief sought from this court was requested merely to preserve the status quo and to compel defendants to take action as already required under state law ... The Court intentionally crafted its November 9, 1994 order to provide an avenue for the improvement of plaintiff's property ... *only with the assumption that the procedures outlined*

> *by the Court would operate to satisfy defendants' requirements for a permanent certificate of occupancy. In doing so, the Court took most of the prescribed procedures from Defendants' brief.*

Def.Exh. 6 at 2–3 (emphasis added). The Court added that it had since become convinced that the injunctive relief sought by Plaintiff was not due to any refusal to act by the Township, but rather an improper collateral attack on the rulings of Livingston County Circuit Judge Burress. the Court accordingly dissolved its prior injunctions, and ordered Plaintiff to desist from further attempts to obtain such relief, the Court refusing to "play a role in this ill-conceived strategy on the part of the plaintiff to play the federal and state jurisdictions against one another." *Id.*

■ The language of the order dissolving the injunction removes any ambiguity about the nature of the injunction itself. The Court explicitly states that it thought the injunction was sought only to preserve the status quo, and being mistaken in that belief, dissolved it. The injunction was clearly a "procedural" victory (as defined in *Webster*). Plaintiff is therefore not a prevailing party, and is not entitled to an award of attorneys' fees.

Plaintiff cites five cases in which Courts have approved an interim fee award on the basis of a preliminary injunction. While the foregoing discussion adequately resolves this motion on the basis of controlling Supreme Court and Sixth Circuit precedent (not cited by the Plaintiff), the Court briefly notes that the cases cited by Plaintiff are clearly distinguishable.

In *Seaway Drive–In v. Township of Clay*, 791 F.2d 447 (6th Cir.1986), plaintiff, a drive-in movie theater, sued to enjoin a Michigan township's ordinance barring the showing of sexually explicit movies. Judge Harvey of this court issued a preliminary injunction, and in his order stated that the theater was likely to succeed on the merits. 791 F.2d at 449. The township responded by enacting a new ordinance, the

enforcement of which Judge Harvey also enjoined. *Id.* Some fifteen months after this second injunction, "by consent of the parties and order of the court," the second injunction was made a final judgment of the court and a permanent injunction. *Id.* at 450. The theater then moved for attorneys fees, and the district court denied them. The Sixth Circuit reversed.

This case is clearly distinguishable from *Seaway* on two grounds. First, the plaintiff did not seek interim fees, but rather an award after final judgment. Second, had Plaintiff sought an interim award, (i.e., before the injunction was made final), it would have been entitled to them under the *Webster* standard (although *Webster* had not yet been decided), because the preliminary injunction was an unambiguous indication of probable success on the merits. Plaintiff's motion therefore finds no support in *Seaway.*

*Rose v. Nebraska,* 748 F.2d 1258 (8th Cir.1984) is likewise inapposite. In that case, which had a lengthy procedural history, the Court of Appeals directed the district court to award attorney's fees for the preliminary injunction stage of the proceedings. 748 F.2d at 1260–61. There, however, the case was mooted after the entry of the preliminary injunction, because the state statute challenged in the suit had been amended. The statutory amendment had the effect of making permanent and final the injunctive relief sought by the plaintiff. Here, the scenario is entirely different. The Court has characterized its injunction as one meant to maintain the status quo (i.e., not to decide the substantial rights of the parties), and nothing—at least as far as the parties have indicated—has rendered the issues moot.

Both *Taylor v. City of Fort Lauderdale,* 810 F.2d 1551 (11th Cir.1987), and *Williams v. Alioto,* 625 F.2d 845 (9th Cir. 1980) followed the same pattern. In each case, plaintiffs challenged a municipal ordinance or policy repugnant to the Constitution (one a clear burden on free exercise of religion, the other a blatantly race-based stop-and-frisk policy). In each case, the district court entered a preliminary injunction barring enforcement of the ordinance or carrying out of the policy, after which the municipalities repealed the ordinance (*Taylor*) and ceased the stop-and-frisk policy (*Williams*). Each case thus became moot. The Court of Appeals in each case reasoned that the mooting of the case before relief was "final" did not rob the plaintiffs of prevailing party status. These cases, like *Rose,* are clearly distinguishable from the case at bar. Here, plaintiff's chance at final relief has not been mooted. Furthermore, as in *Seaway,* the nature of the relief obtained in *Williams* and *Taylor* was of an entirely different nature from the injunction issued here.

Plaintiff's final, undiscussed, citation is to *Coalition for Basic Human Needs v. King,* 691 F.2d 597 (1st Cir.1982). There, the plaintiff did not "obtain a final judgment or even a preliminary injunction." 691 F.2d at 600. The plaintiff had sued the Governor of Massachusetts and other state officials during the Commonwealth's 1981 budget crisis, seeking to force the Commonwealth to continue making AFDC payments, and salary payments to state employees. The district court denied the request for a TRO or a preliminary injunction, and the plaintiff immediately lodged an appeal, applied to the First Circuit for an injunction pending appeal, and was granted that injunction pending appeal. During the pendency of the appeal, the budget crisis was resolved and the case mooted. 691 F.2d at 598–99.

The First Circuit held that all the plaintiff was seeking was "very temporary and provisional relief. No one doubted that Massachusetts would end up with a budget. No one doubted that the state's welfare clients would receive their aid checks in the long run." 691 F.2d at 601. The plaintiff's object was "precisely the legal entitlement that they received." Again, this case is so factually dissimilar to the case at bar as to be of no assistance to Plaintiff.

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Interim Attorneys' Fees.

## III. PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff seeks leave to file a second amended complaint. In the motion, Plaintiff asserts that "the primary dispute between Dubuc and Green Oak township was resolved on or about August 19, 1997," when the Building Zoning Administrator issued permanent certificates of occupancy to Dubuc for all of the contested buildings on his property. Plaintiff now seeks leave to amend the complaint to add events occurring between the time of the first amended complaint and August 19, 1997, and to add as defendants township officials responsible for those acts.

### A. The Legal Standard

■ After a responsive pleading has been filed in a civil action, the Plaintiff may amend his complaint only with leave of the Court or written consent of his opponent. Leave should be freely granted when justice so requires. FED.R.CIV.PRO. 15(a). Courts have discretion to deny leave to amend, however, when amendment would be futile, when plaintiff unduly delays seeking such leave, or when allowing the amendment would result in unfair prejudice to the defendant. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Delay alone is generally not sufficient to warrant denial of leave to amend. Rather, the delay must unfairly prejudice the defendant. *See Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir.1994).

On the other hand, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir.1995). While there is "no bright line for determining how much delay is too much, the longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir.1994). In considering what constitutes prejudice, it is appropriate for the Court to consider "whether the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery or prepare for trial; significantly delay resolution of the dispute; or prevent the plaintiff from bringing a timely action in another forum [in the case of a new defense offered by way of amendment]". *Id.* It is against these standards that Plaintiff's motion for leave to amend must be judged.

### B. Plaintiff's Motion to Amend Was Unreasonably Delayed and Would Prejudice Defendants

■ Here, the Plaintiff's delay was substantial. By Plaintiff's own admission, August 19, 1997 is the last relevant date of any dispute between him and the Township. From that date until this Court entered a stay of this action, thirteen months passed, during which time Plaintiff was free to bring his motion for leave to amend. Nowhere in his pleadings does Plaintiff seek to explain or excuse that delay. Moreover, the delay is a thirteen month-delay only with respect to the Township's latest allegedly unlawful actions; the delay with respect to the Township's actions during the years 1994–1996 is even longer. Nor could Plaintiff plausibly claim that the facts alleged in the proposed amended complaint, or their alleged legal significance, only recently came to his attention. Plaintiff's persistent litigation against the Township in multiple forums over more than a decade are testament to his continual awareness of the Township's actions and his persistent sense of being aggrieved. There is thus no excuse for the delay.

On top of the delay in filing for leave to amend, allowing the amended complaint would clearly prejudice the Defendants, both those already before the Court as

well as those whom Plaintiff would now add. This case was on the verge of trial three years ago. The need to await resolution of the state court proceedings has been the prime cause of delay to this point. To add new claims and new defendants at this point would, however, clearly and unjustly postpone resolution of this saga. To repeat, granting leave to amend would thus "significantly delay the resolution of the dispute." *Phelps, supra.* Furthermore, granting leave to amend would "require the opponent to expend significant additional resources to conduct [anew] discovery or prepare [anew] for trial." *Id.* The new Defendants would each be required to familiarize themselves with the nine-years long record in this case just to formulate an appropriate discovery strategy; Plaintiff would be entitled to discovery from them; and the existing Defendants would have to attend to all of that discovery as well, to protect their own interests. The existing Defendants would also have to conduct discovery related to the after-occurring events in which they are alleged to have been involved.

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Leave to File Second Amended Complaint.

## IV. DEFENDANTS' MOTION "ASSERTING LEGAL DEFENSES"

### A. Introduction

At the final pre-trial conference held on June 4, 1997, Judge Newblatt indicated his dissatisfaction with the parties' Joint Final Pretrial Order. He therefore issued an order (Docket No. 152) directing further submissions from the parties. Among the submissions he ordered was "a motion asserting any legal defense that can be decided without trial." The instant motion of Defendants, "Asserting Legal Defenses" was their response to Judge Newblatt's order.

In that motion, Defendants raise five arguments. First, they claim that Plaintiff cannot establish that the Township had the requisite policy to establish municipal liability under § 1983. Second, they claim that there was no deprivation of Plaintiff's First Amendment rights of access to the courts, not any chilling effect from the township's actions. Third, the statute of limitations bar several claims of the Plaintiff. Fourth, the individual defendants are entitled either to absolute or qualified immunity from Plaintiff's suit. Fifth, Defendants claim that claim preclusion, issue preclusion, or both, bar this suit, and it should be dismissed in its entirety.

Judge Newblatt held a hearing on the motion on July 8, 1997. He issued an order on July 15 (Docket No. 164). That order decided the statute of limitations question, and held that Plaintiff could in no event recover for actions that took place more than three years before the instant suit was filed. Judge Newblatt did not rule either on the immunity defense, or the preclusion defense, instead ordering further briefing from the parties. They accordingly supplied the Court with pleadings. (Docket Nos. 164–72). The case was transferred here before Judge Newblatt ruled on the outstanding issues. The Court turns first to the preclusive effect of the state court proceedings, and finding that issue dispositive, does not address the remaining arguments advanced by Defendants.

### B. The Legal Standard: Claim Preclusion and Issue Preclusion

Federal court adjudication of claim preclusion and issue preclusion in Michigan presents a problem of terminology. The Sixth Circuit has expressed a clear preference for the modern labels of issue preclusion and claim preclusion. *See Heyliger v. State University,* 126 F.3d 849, 852 (6th Cir.1997) ("We also express our hope that future litigants, in the interests of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion and which refrain from using the predecessors of those terms, whose meanings

have become so convoluted"). At the same time, the Michigan Supreme Court, as recently as 1999, has expressed its preference for the classic terms, res judicata and collateral estoppel. *See J.A.M. Corp. v. AARO Disposal, Inc.*, 461 Mich. 161, 168 n. 7, 600 N.W.2d 617 (1999) ("This Court generally uses the terms 'res judicata' and 'collateral estoppel' rather than the phrases 'claim preclusion' and 'issue preclusion' "). Because the Court must apply Michigan's law of preclusion, it must squarely face this evolving terminological conundrum.

The Court has taken the following approach. First, in its own analysis, the Court uses the terms issue preclusion and claim preclusion, as directed by the Sixth Circuit. When paraphrasing a decision of the Michigan courts, the Court freely switches from the Michigan court's language to the modern convention, without noting the alteration. When quoting directly from a Michigan court opinion, the Court substitutes the modern terms in brackets to indicate the alteration from the Michigan court's use of the classic terms.

■ A federal court is to give a state court judgment the same preclusive effect it would have in the courts of the rendering state. *See Heyliger v. State University*, 126 F.3d 849, 851–52 (6th Cir.1997) (explaining the Full Faith and Credit Act, 28 U.S.C. § 1738). Accordingly, whether the present action is precluded by any of Plaintiff's proceedings in the Michigan courts is to be determined with reference to Michigan law on preclusion.

■ Claim preclusion has the following elements in Michigan: (1) the first action must have resulted in a judgment on the merits; (2) the earlier action must have between the same parties (or their privies); and (3) the issues in the later action must have been resolved in the first action, either because they were actually litigated, or because they might have been raised in that action through reasonable diligence of the parties. *See, e.g., Sloan v.*

*City of Madison Heights*, 425 Mich. 288, 295, 389 N.W.2d 418 (1986). Michigan courts apply the doctrine of claim preclusion broadly, to bar not only claims actually brought in an earlier action, but also all claims that could have been brought based on the same transaction or occurrence. *See Gose v. Monroe Auto Equip. Co.*, 409 Mich. 147, 159–60, 294 N.W.2d 165 (1980). Thus, claim preclusion applies

> not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

*VanderWall v. Midkiff*, 186 Mich.App. 191, 197, 463 N.W.2d 219 (1990) (internal citations omitted).

■ Issue preclusion in Michigan has four elements: (1) the precise question at issue in the present case must have been raised and actually litigated in the prior action; (2) determination of that issue was necessary to the resolution of the prior case; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is raised as a defense had a full and fair opportunity to litigate the issue in the prior proceeding. Issue preclusion does not bar this action because, as will become clear in the discussion below, none of the issues were "actually litigated" in state court. Rather, Plaintiff has lost in state court by dint of his failure (or refusal) to obey the orders of those courts. Accordingly, the Court does not discuss issue preclusion further.

## C. The State Court's Decision in *Dubuc II* Bars This Action

In the case at bar, Plaintiff has but one surviving claim: that Defendants, by retaliating against him for his prior exercises of his First Amendment rights to speak to the press and to petition the courts, violated 42 U.S.C. § 1983, and are liable to him

in damages. That claim is precluded if any of Plaintiff's prior state court actions involved the same parties as this case, resulted in a judgment on the merits, and this claim was—or should have been—raised in that earlier action.

Plaintiff has filed three actions against some or all of these Defendants in Livingston County Circuit Court: (1) *Dubuc v. Green Oak Township, Ron Niece, Gordon Appleton, and Dale Brewer*, Case No. 88–9402–NO; (2) *Dubuc v. Green Oak Township, Green Oak Township Planning Commission, Gordon Appleton, and Dale Brewer*, No. 89–10022–CZ; and (3) *Dubuc v. Green Oak Township, Zoning Board of Appeals, Dale Brewer, Raymond Clevenger, and Michael Vallie*, No. 92–012517–CZ (respectively, Dubuc II, Dubuc III, and Dubuc IV).

In *Dubuc II*, Plaintiff's second amended complaint stated seven counts against the Township. Count I alleged a violation of 42 U.S.C. § 1983, in that the Defendants, by blocking Plaintiff's attempts to develop his land, denied Plaintiff procedural and substantive due process of law, and equal protection of the laws, in violation of the 5th and 14th Amendments to the Constitution. The remaining six counts of the complaint allege various state law torts and state constitutional violations on the basis of the same actions by the Defendants. Plaintiff moved to amend the complaint a third time, to add a theory of retaliation for his previous exercise of his First Amendment rights. That motion was never ruled on, because the court dismissed the case. The second amended complaint was filed in November, 1989, and included acts of the township and its officials through that date.

The procedural history of *Dubuc II* is recounted at length in the Court of Appeals opinion affirming its dismissal. *See Dubuc v. Green Oak Township*, Nos. 138574, 154510, 158665 (Mich.Ct.App. June 13, 1995) (unpublished). *Dubuc II*, Livingston County Circuit Court Case No. 88–9402, was filed on May 23, 1988. As noted, the complaint stated seven counts against Green Oak Township and various Township officials. One of these counts alleged violations of 42 U.S.C. § 1983, while the remainder alleged violations of the Michigan Constitution and various state law torts.

The case languished without progress for nearly three years. These delays were caused by amendment of the pleadings, as well as Plaintiff's two motions to disqualify the trial judge. The latter of the two recusal motions was denied by the Chief Judge of the Circuit Court on November 25, 1991. *See id.*, slip op. at 2 & nn. 4, 5. The trial court then immediately scheduled a status conference for December 6, 1991, in an effort to schedule hearings for several pending motions. *Id.* Plaintiff's counsel failed to appear at the status conference, forcing the trial court to adjourn the conference until December 9. At that conference, the trial court scheduled a December 18, 1991 hearing on pending motions in the case. Again, however, Plaintiff's counsel failed to appear or to have substitute counsel appear. *Id.*

Accordingly, on December 18, the trial court ordered Plaintiff's counsel to show cause why the case should not be dismissed and sanctions awarded for the two failures to appear. The Court held a show cause hearing on December 23. The Court ordered Plaintiff's counsel to pay the Township and its attorney, Raymond Clevenger (a Defendant here) two thousand dollars, and to pay Livingston County and its attorneys one thousand dollars as a sanction for Plaintiff's counsel's failure to appear at the December 6 conference and December 18 hearing. The court ordered the sanctions to be paid within fifteen days, failing which the case would be dismissed with prejudice.

A written order conforming to the court's decision was entered on January 10, 1992, pursuant to Michigan Court Rule 2.602(B)(3) (providing for entry of a proposed order drafted by a party if no objec-

tions to it are filed within seven days and in the opinion of the Court the proposed order conforms to the court's decision). Counsel for Plaintiff failed to pay the sanctions within the time allowed. The Court denied Plaintiff's motion to reconsider the order for sanctions, and in accordance with that order, dismissed Plaintiff's complaint with prejudice based on the failure to pay. The order of dismissal was entered March 12, 1992. At the time of the dismissal, Plaintiff's motion to amend the complaint (for a third time) to add claims that the Township had violated his First Amendment rights was pending before the court, and was rendered moot by the dismissal.

█ If *Dubuc II* has claim preclusive effect on this case, then the litigation is over. The first requirement is that *Dubuc II* have resulted in a judgment on the merits. The Michigan Court of Appeals has squarely held, albeit without analysis, that a dismissal with prejudice for failure to comply with a court order "amount[s] to an adjudication on the merits." *Wilson v. Knight–Ridder Newspapers, Inc.*, 190 Mich.App. 277, 278–79, 475 N.W.2d 388 (1991). This result is also consistent with federal principles of claim preclusion. Rule 41(b) provides that an involuntary dismissal for want of prosecution or failure to comply with any order of the court is a dismissal with prejudice and acts as an adjudication on the merits, unless the court orders otherwise. Accordingly, the dismissal of *Dubuc II* was a final judgment on the merits. The first element for the application of claim preclusion is met.

The second element is that *Dubuc II* must have been between the same parties as the case at bar. This element is uncontroversial in this case. The plaintiff in each case is Dennis Dubuc.[2] The Defendants in *Dubuc II* were Green Oak Township, also a Defendant here; Ron Niece,

not a Defendant here; Gordon Appleton, not a Defendant here, and Dale Brewer, a Defendant here, originally. This case has two Defendants not present in *Dubuc II*, Raymond Clevenger and the Estate of Michael Vallie. Vallie was merely the successor in office to Appleton. Both Appleton, in *Dubuc II*, and Vallie (or his estate), here, are being sued for their alleged malfeasance in office, that is, their unlawful treatment of Plaintiff. Thus, as to Vallie, there is privity with Brewer.

The crux of the claim preclusion inquiry here is thus the third element: whether the claims in this complaint were, or could have been raised in *Dubuc II*. Plaintiff essentially claims that for more than a decade, from 1985 to 1997, the Township and its officials were engaged in a continuous course of conduct designed to retaliate against him for his speaking to the press and petitioning the courts for redress. Indeed, after filing each of his actions in state court, as well as here, Plaintiff as a matter of habit has moved repeatedly to amend his complaint to "update" the list of actions constituting this allegedly retaliatory behavior. The crucial questions for the Court then are: At what point do later-occurring allegations of this sort give rise to new claims that could not have been raised in an earlier proceeding? And do plaintiffs have an obligation, when they become aware of new claims that can be joined to an ongoing suit, to so join them?

In the complaint in the case at bar, Plaintiff alleges a series of events surrounding his attempt, commencing apparently in April, 1990, to obtain the Township's approval for a split of his lot, in order that he could sell a portion of it.[3] Plaintiff alleges that the split was not acted until May 25, 1990 (a mere seven weeks after it was filed), when it was denied, and

---

**2.** In *Dubuc II*, Green Oak Industries, Inc. was also a plaintiff. As the complaint in *Dubuc II* itself recited, Dubuc was the sole shareholder of the company. Its absence from this case is no impediment to the application of claim preclusion.

**3.** According to the complaint, Dubuc had reached an agreement to sell, contingent on approval of the split, sometime either early in 1990 or late in 1989.

that thereafter the Zoning Board of Appeals repeatedly table his appeal from that denial, at meetings occurring through 1990 and into 1991. Apparently, Plaintiff never moved to amend any of his two pending state cases (both *Dubuc II* and *Dubuc III* were then pending in front of Judge Burress). However, there was no lack of judicial involvement in the lot split request. Plaintiff repeatedly (and unsuccessfully) petitioned Judge Burress to compel a closing on the land sale. Plaintiff claims that this lot-split denial, and the continuing refusal of the ZBA to rule on his appeal, were motivated by an impermissible retaliatory animus for Plaintiff's previous court actions and press comments.

When, in the course of a law suit, the plaintiff becomes aware of a new cause of action against the same defendant, the plaintiff should move to include the new claim or risk having the doctrine of claim preclusion apply to the omitted claim. *See, e.g., Cox v. Tennessee Valley Auth.*, 1994 WL 43433 (6th Cir. Feb. 10, 1994) (unpublished disposition). Clearly, Plaintiff is familiar with the process of amending a complaint to add after occurring events and causes of action. He pursued that course in *Dubuc II* itself three times, twice successfully, and has attempted it three times in the case at bar, with the last such motion now pending before the Court. Dubuc would have the Court (and jurors) believe that Township officials pursued a concerted plan to thwart his every effort to develop his property, over a thirteen-year period. He consistently attempted to update his complaints so as to include each and every retaliatory act. He should have done so with this claim. He had two ongoing state court cases, and could have added the lot-split claim to either of them.

Plaintiff might argue that the state cases concerned certificates of occupancy, while the current claim involves a lot-split. This, however, is not a crucial difference. As the First Circuit (per Breyer, J.) has observed (in evaluating Massachusetts law on claim preclusion, which uses an identical "transactional" approach to that used by Michigan and federal law), "transactions related in time space, origin *or motivation*" may qualify as the "same transaction or occurrence" for claim preclusion purposes. *Isaac v. Schwartz*, 706 F.2d 15, 17 (1st Cir.1983) (emphasis added). Here, the very core of Plaintiff's complaint is the retaliatory animus that he alleges underlies all the acts against him over a dozen years thus shared the same motivation. To allow Plaintiff to file a new suit for each episode in the saga would defeat the core policy underlying the doctrine of claim preclusion, which is to conserve judicial resources and avoid duplicative litigation by encouraging parties to litigate related claims in the same action.

In *Jones v. State Farm Mutual*, 202 Mich.App. 393, 401, 509 N.W.2d 829 (1993), the Michigan Court of Appeals stated that the test of same transaction or occurrence is whether the same facts or evidence are material to the two actions. That statement of the test also leads to the conclusion that the land-split claim should have been joined in state court to either *Dubuc II* or *Dubuc III*. The crucial element of Plaintiff's claim in this case is the Township's retaliatory animus, whether that manifested itself in deliberate delay of his application for a zoning variance or a denial of his lot-split request. Indeed, by fracturing the individual slights into separate cases in separate forums, Plaintiff minimizes the cumulative effect they might have on a trier of fact. Logic and law compel the conclusion that Plaintiff should have sought leave to add the land-split dispute to the complaint in *Dubuc II*.

The dismissal of *Dubuc II* bars this action. It involved the same parties, was resolved by a final judgment on the merits, and all the claims raised in this case were, or could have and should have been raised there.

Accordingly, the Court GRANTS Defendant's Motion Asserting Legal Defenses in part, and holds that the doctrine of claim

preclusion bars this action by virtue of the state court's dismissal with prejudice of *Dubuc II*.

### D. Remainder of Defendants' "Legal Defenses"

The remainder of Defendants' arguments are moot, but the Court makes the following brief comments to assure a complete record. As to qualified immunity, Judge Newblatt has already ruled in this case that the right to speak to the press about dissatisfaction with government officials and to petition courts for the redress of grievances against those officials was well established long before this case arose. Furthermore, any reasonable government official would have known that to retaliate against a citizen for the exercise of those rights is impermissible. Because qualified immunity depends on a showing either that the right in question was not clearly established, or that a reasonable officer would not have known her conduct to violate those rights, the defense fails here. The Court finds no flaw in Judge Newblatt's reasoning on that issue and would not disturb his ruling on it if the Court were required to address the issue.

As for the statute of limitations, Judge Newblatt ruled that recovery for any acts prior to 1988 are barred by the statute of limitations. Similarly, he has ruled that there is sufficient evidence for trial on the existence of a Township policy of retaliation. Again, if claim preclusion were not dispositive, the Court would find no flaw in, and would not alter, Judge Newblatt's prior ruling on those issues.

### V. PLAINTIFF'S MOTION TO REINSTATE EQUAL PROTECTION CLAIM

Among the federal rights that Plaintiff claims was violated was his right to equal protection of the laws: that he was singled out for strict application of the zoning and building codes because he was Dennis Dubuc—i.e., that he was a "class of one." Relying on *Futernick v. Sumpter Town-* *ship*, 78 F.3d 1051 (6th Cir.1996), Judge Newblatt held this theory was not legally viable, and dismissed the claim. Other Circuits have held differently, and the Supreme Court sided with those other circuits in February, 2000. *See Village of Willowbrook v. Olech*, 528 U.S. 1073, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

■ Were the Court free to consider his arguments, Plaintiff might well be entitled to reinstatement of the claim. However, claim preclusion applies to the equal protection claim as it does to the retaliation claims. Indeed, claim preclusion if anything has greater force with respect to the equal protection claim, because it was actually pleaded in *Dubuc II*. Plaintiff's failure to adhere to the Circuit Court's orders in *Dubuc II* resulted in the dismissal of that case with prejudice. That is an adjudication on the merits that bars his relitigation of the claim here. Permitting Plaintiff to reinstate the equal protection claim would, in essence, allow him to collaterally attack the judgment of the state courts. The Court therefore DENIES the motion to reinstate the equal protection claim.

Having concluded that claim preclusion bars the equal protection claim as well as the claims in the operative version of the complaint, and having denied Plaintiff leave to amend his complaint, for the reasons set forth above, Plaintiff has no viable claims in this Court. Accordingly, the complaint must be dismissed with prejudice.

### SUMMARY

For the reasons stated, the Court

(1) DENIES Plaintiff's Motion for Interim Attorneys' Fees (Docket No. 216);

(2) DENIES Plaintiff's Motion for Leave to File Second Amended Complaint (Docket No. 213);

(3) DENIES Plaintiff's Motion for Reinstatement of Equal Protection Claim (Docket No. 217);

(4) GRANTS in part and DENIES in part Defendants' Motion Asserting Legal Defenses (Docket No. 158); and

(5) DISMISSES the complaint with prejudice.

LET JUDGMENT ENTER ACCORDINGLY.