RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0412P (6th Cir.)
File Name: 02a0412p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DENNIS DUBUC,
       *Plaintiff-Appellant,*

       *v.*

GREEN OAK TOWNSHIP;
GREEN OAK TOWNSHIP
ZONING BOARD OF APPEALS;
DALE BREWER; RAYMOND
CLEVENGER; ESTATE OF
MICHAEL VALLIE, in their
individual and official
capacities, Jointly, and
Severally,
       *Defendants-Appellees.*

Nos. 00-2473;
01-2317

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 91-77206—Paul D. Borman, District Judge.

Argued: September 18, 2002

Decided and Filed: December 2, 2002

Before:  MARTIN, Chief Circuit Judge; MOORE, Circuit Judge; WISEMAN, Senior District Judge.[*]

———————————

**COUNSEL**

**ARGUED:**    Robert D. Horvath, Troy, Michigan, for Appellant.  Gail P. Massad, CUMMINGS, MCCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellees. **ON BRIEF:**  Robert D. Horvath, Troy, Michigan, for Appellant.  Gail P. Massad, CUMMINGS, MCCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellees.

WISEMAN, D. J., delivered the opinion of the court, in which MARTIN, C. J., joined.  MOORE, J. (pp. 31-33), delivered a separate opinion dissenting in part.

———————————

**OPINION**

———————————

WISEMAN, Senior District Judge.  This case involves a dispute over land use between landowner Dennis Dubuc ("Appellant") and Green Oak Township (the "Township"), where the land is located.  This dispute has taken numerous forms, lasted many years, and involved multiple judicial decisions by various courts. In its present manifestation, the parties opposing Appellant are Green Oak Township, Green Oak Township Zoning Board of Appeals, Dale Brewer, Raymond Clevenger, and Estate of Michael Vallie (collectively, "Appellees").  The first of these two companion cases, No. 00-2473, was filed by Appellant in 1991 and claims that the Township's denial of his application for a lot split was in retaliation for his exercise of his First

———————————

[*] The Honorable Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

Amendment rights, in violation of 42 U.S.C. § 1983. Appellant now appeals the judgment of the district court, which: (1) dismissed his complaint as barred by claim preclusion, (2) denied his motion for interim attorney's fees, (3) denied his motion to file a second amended complaint, and (4) denied his motion to reinstate his Equal Protection claim. In the second of the two companion cases, No. 01-2317, Appellant argues that the district court erred in awarding Appellees attorney's fees pursuant to 42 U.S.C. § 1988 as the prevailing party in the § 1983 suit below. For the reasons stated herein, we **AFFIRM** the district court's decision in the first case but **REVERSE** the district court's award of attorney's fees to Appellees in the second companion case.

## I.

Appellant owns approximately four acres of land, divided into two parcels, in the Township. In October 1985, Appellant began construction on the northern parcel of a second storage building, but the Township subsequently issued a work-stop order and denied a building permit because the structure violated a one hundred foot setback requirement for industrial buildings adjacent to residentially zoned areas. Appellant then instituted an action in Livingston County Circuit Court, No. 85-8102 (hereinafter, "*Dubuc I*"), seeking a variance from the setback requirement, and that action produced a consent judgment on May 21, 1986. This consent judgment resulted in the issuance of a building permit contingent upon Appellant's compliance with relevant building codes, local zoning ordinances, and a revised site plan.

Appellant completed construction of this second building as well as a third building, and applied for certificates of use and occupancy for both. In February 1987, the Township denied these certificates after inspection and ordered Appellant and his tenants to vacate the third building because it did not comply with fire and safety requirements and was

not constructed in conformity with the approved site plan. The Township denied certificates for the second building because it was not constructed in accordance with the consent judgment and violated various building and construction codes. Appellant refused to vacate either building and filed a second suit in Livingston County Circuit Court, No. 88-9402 (hereinafter, "*Dubuc II*"), alleging violations of 42 U.S.C. § 1983, the Michigan Constitution, and several state common law torts. Defendants in that suit were Green Oak Township, Green Oak Township Board, Ron Niece, and Gordon Appleton. (Jt. App. at 456). As a result of two amendments to the complaint and motions seeking disqualification of the trial judge, there was not a status conference for this lawsuit until December 6, 1991. Appellant and his counsel failed to appear at this status conference. Appellant again failed to appear at a hearing on pending motions on December 18, 1991. As a result, the *Dubuc II* court *sua sponte* ordered Appellant's counsel to appear on December 23, 1991, and show cause why the case should not be dismissed and sanctions awarded to the defendants. After arguments from both parties at this show cause hearing, the court ordered Appellant to pay sanctions of $2,000 to the Township and $1,000 to the County and its attorneys within fifteen days or the case would be dismissed with prejudice. *Id.* at 2254. After Appellant failed to pay the sanctions within this deadline and failed to object to the proposed order drafted by the defendants regarding the sanctions and a dismissal, the court dismissed *Dubuc II* with prejudice on March 12, 1992.

While *Dubuc II* was pending, Appellant sought a building permit from the Township to construct a building on the southern parcel of his land, and the Township denied the permit because the approved site plan had expired and the building dimensions and work site did not conform with that site plan. Appellant responded with a mandamus action in Livingston County Circuit Court, No. 89-10022 (hereinafter, "*Dubuc III*"), challenging the denial. The defendants filed a counterclaim seeking enforcement of the 1986 consent

after the first suit was dismissed, and noting that the second suit could still "rely also on acts preceding the [first] judgment insofar as these lend significance to the later acts").

The majority's apparent fear that litigants will endlessly bring new suits by adding new acts of retaliation simply will not come to fruition. Once a court had determined whether the plaintiffs' conduct was constitutionally protected, issue preclusion — not claim preclusion — would bar them from relitigating that issue in subsequent suits. Here, of course, the issue was never "actually litigated," so the issue was not precluded. *See, e.g.*, *Berkaw v. Mayflower Congregational Church*, 144 N.W.2d 444, 458 (Mich. 1966); Restatement (Second) of Judgments § 27 cmt. e, at 257 ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.").

The rule requiring acts arising from the same retaliatory animus to be litigated together is limited by Michigan's general rules of claim preclusion, which bar only those claims that involve the same facts or evidence or those claims that might have been raised in the first action. Under the preferred rule, plaintiffs should join all claims arising out of a transaction that have accrued "up to the time when action is brought." Restatement (Second) of Judgments § 24, at 201. I would hold that claim preclusion bars Dubuc from alleging retaliatory actions that occurred before June 5, 1990, when Dubuc last moved to amend his complaint in *Dubuc II*.

The majority's holding is contrary to Michigan claim preclusion law and will eliminate remedies available to undisputed victims of ongoing retaliation. I respectfully dissent.

according to the majority, "[h]ow the Appellees' retaliatory animus manifested itself is not the crucial element of Appellant's claim; rather, it is the retaliatory animus itself." Majority Op., *supra* at 18. This argument has two flaws, however. First, it overlooks the fact that "[h]ow the Appellees' retaliatory animus manifested itself" is a necessary element of Dubuc's allegations. *See, e.g.*, *Cockrel v. Shelby County School District*, 270 F.3d 1036, 1048 (6th Cir. 2001) (identifying both retaliatory animus and adverse actions as necessary elements of a First Amendment retaliation claim). Second, a bar prohibiting subsequent suits arising from the same retaliatory animus, no matter what retaliatory act might follow, offers no limiting principle. It is unclear, under the majority's theory, how a victim of ongoing retaliation could ever file a suit alleging subsequent acts of retaliation — even if the victim had prevailed on the first suit.

So far as I am aware, Michigan courts have never ruled that claim preclusion bars plaintiffs from alleging harm from events that occurred after the disposition of the original suit. To the contrary, Michigan courts recognize that continuous harms that justify subsequent lawsuits can arise from a single initial incident. *See, e.g.*, *Said v. Rouge Steel Co.*, 530 N.W.2d 765, 770 (Mich. Ct. App. 1995) (recognizing, in maintenance and cure context, that when defendant violates a "continuing" duty, "the doctrines of res judicata and collateral estoppel do not bar serial suits"); *Burroughs v. Lake Arrowhead Prop. Owners Ass'n*, No. 221511, 2001 WL 709277 (Mich. Ct. App. Mar. 16, 2001) (unpublished) (holding claim preclusion inapplicable when plaintiff alleged continuous breach of duty, because, first, "the facts were not identical because subsequent occurrences of defendant's conduct created new claims and a new cause of action," and second, because "as a matter of practicality, the issue of damages for future breach of the defendant's duty to maintain *could not have been litigated until such breach occurred*") (emphasis added); *see also* Restatement (Second) of Judgments § 24, at 204 (1982) (stating that prior antitrust suit would not bar subsequent suit that relied on acts that occurred

judgment in *Dubuc I*, a contempt finding against Appellant for failing to bring the two northern buildings up to code, and damages. The trial court denied Appellant's claim and granted summary judgment for the defendants on their counterclaim, concluding that Appellant had no legal right to the issuance of a building permit and the Township had no obligation to issue one. After his motion for reconsideration failed, Appellant appealed and *Dubuc III* was consolidated with *Dubuc II*. The court of appeals affirmed both judgments in a *per curiam* order on June 13, 1995.

Appellant filed another suit, No. 92-012517 (hereinafter, "*Dubuc IV*"), in Livingston County Circuit Court, arising from work Appellant completed on the roof of the second northern building in 1991. The Township had requested that Appellant seek a building permit and submit engineered drawings for the work in April 1991, but Appellant refused and argued the work was only repair work. In November 1992, Appellant evicted one tenant of the second northern building and attempted to relocate four tenants from another building into that space. The Township refused to issue certificates of occupancy for these tenants, citing Appellant's failure to conform to the city building codes. On December 2, 1992, the Township wrote to Appellant and described what would be required to obtain the certificates. Appellant responded on December 7, 1992, stating that he believed he did not need to follow those procedures, and he filed *Dubuc IV* on the next day, seeking a writ of mandamus compelling the issuance of certificates of use and occupancy.

In January 1993, the Township moved for and was granted an *ex parte* temporary restraining order forbidding Appellant or those acting at his direction from doing any construction, alteration, or building work on the second northern building. After several hearings, this temporary restraining order was converted to a preliminary injunction on August 31, 1993. Appellant's motion to disqualify the trial judge was denied and that denial was affirmed on appeal. The *Dubuc IV* court denied the request for mandamus in November 1995, finding

it frivolous, and found Appellant in contempt of the 1986 consent judgment in *Dubuc I*, the January 1993 temporary restraining order, and the August 1993 preliminary injunction. The court of appeals affirmed. *See Dubuc v. Green Oak Township, et al.*, 1999 Mich. App. LEXIS 2105 (Mich. Ct. App. Jan. 5, 1999) (unpublished opinion). The Michigan Supreme Court denied Appellant's motion for leave to appeal and his motion for reconsideration.[1] *Dubuc v. Green Oak Township*, 609 N.W.2d 829, 829 (Mich. 2000). Additionally, the Michigan Supreme Court granted the defendant's motion for sanctions and remanded to the trial court for determination of the defendant's actual expenses. *Id.*

## II.

In 1990, Appellant sought approval to split his lot so he could sell it. Appellant filed the first of the two companion suits at bar in May 1991, alleging that the Township's denial of his application for a lot split was a taking without just compensation in violation of the Fifth Amendment. Defendants originally were Green Oak Township, Green Oak Township Zoning Board, the Township's supervisor Dale Brewer, and the Township's attorney Raymond Clevenger. Appellant claimed that the Township had retaliated against him because of his previous state law suits and his complaint to the Michigan Construction Code Commission, which resulted in corrective action taken against the Township and its zoning and building departments. According to Appellant,

---

[1]Concurring in the denial of Appellant's motion for reconsideration, Justice Corrigan, joined by Chief Justice Weaver and Justice Kelly, lambasted Appellant and encouraged the trial court "to consider extraordinary sanctions to deter plaintiff from continuing his vexatious tactics that have led to years of abusive litigation." *Dubuc v. Green Oak Township*, 609 N.W.2d 829, 829 (Mich. 2000) (Corrigan, J., concurring). Justice Corrigan continued: "Plaintiff has abused the judicial process by filing multiple frivolous lawsuits and then intentionally delaying their progress. Plaintiff's abusive tactics have drained valuable time and financial resources . . . wasting taxpayer's money." *Id.* at 830.

---

## DISSENT

---

KAREN NELSON MOORE, Circuit Judge, dissenting in part. I agree with the majority that the district court did not abuse its discretion in denying Dubuc's motion for leave to file a second amended complaint, that the district court did not abuse its discretion in denying Dubuc attorney fees, and that the district court erred in awarding attorney fees to the defendants. However, I disagree with the majority's conclusion that the claims that Dubuc alleged in the *Dubuc II* suit bar all of the claims that Dubuc asserts here. *Dubuc II* was dismissed on March 12, 1992. In the present suit, Dubuc alleges, *inter alia*, constitutional violations that occurred in October, November, and December of 1992. The majority holds that under Michigan law, claim preclusion can bar a plaintiff from asserting claims that arose *after* the previous suit had been *dismissed*. Finding no basis for this holding in Michigan law or in general principles of claim preclusion, I respectfully dissent.

The majority states that under Michigan law, a claim is barred if it "might have been raised in the first action through reasonable diligence of the parties," and that "[t]he test in Michigan is whether the same facts or evidence are essential to the maintenance of the two actions." Majority Op., *supra* at 16-17. The majority thus appears to conclude both that Dubuc could have raised, in a lawsuit dismissed in March of 1992, events that occurred in December of 1992, and that the facts essential to *Dubuc II*, which involved alleged retaliatory acts between November of 1985 and April of 1989, are essential to a lawsuit challenging acts that occurred between 1990 and 1992.

The majority concludes that all of Dubuc's claims should have been litigated in *Dubuc II* because the alleged retaliatory acts arose from the same retaliatory animus. That is,

However true that was in the past, this suit was not obviously frivolous, but in fact survived for many years under two different judges. Attorney's fees cannot be awarded in an effort to teach Appellant a lesson when this is not one of the instances in which he blatantly abused the judicial system. The district court's award of attorney's fees to Appellees is reversed.

## X.

Based on the foregoing, we **AFFIRM** the district court's decision in the first companion case (1) dismissing for claim preclusion, (2) denying Appellant's motion for interim attorney's fees, (3) denying Appellant's motion to file a second amended complaint, and (4) denying Appellant's motion to reinstate, but **REVERSE** the district court's award of attorney's fees to Appellees in the second companion case.

Appellees' retaliation took the form of consistent denials or delays after he requested variances or permits.

In December 1992, Judge Newblatt granted in part and denied in part Appellees' motion for summary judgment, finding the claim was not ripe for federal adjudication because Appellant had not exhausted all state judicial remedies. *See Dubuc v. Green Oak Township, et al.*, 810 F. Supp. 867, 871 (E.D. Mich. 1992). Judge Newblatt also found that Appellant had failed to state a claim for substantive due process violations, dismissing those claims. *Id.* at 874. Appellant's remaining claims were that the Township and its officials had violated his First Amendment rights and 42 U.S.C. § 1983, and the court specifically found that Appellant had properly alleged the elements of a claim for municipal liability under that statute. *Id.* at 872. Judge Newblatt rejected the Township's argument that the court lacked jurisdiction to hear the case because it would duplicate pending state action, because the state action involved refusal to grant Appellant a certificate of occupancy, while the federal action involved refusal to allow the lot split. *Id.* at 870. The court held that there would be no inconsistency in holding that the refusal to grant the certificate was justified while the refusal to split the lot was not. *Id.*

Appellant filed an amended complaint in February 1993, alleging additional interference with the use of his property by the township building administrator, Michael Vallie ("Vallie"). After Vallie passed away, his estate was substituted as defendant. In late 1993, Appellant filed a series of motions seeking injunctive relief. On November 9, 1994, Judge Newblatt granted an injunction in part, ordering the Township to issue certificates of occupancy for Appellant's buildings, subject to Appellant's compliance with seven conditions. In this order, the judge credited the state administrator's opinions over that of Vallie because of "Vallie's obvious animus and uncooperative attitude toward plaintiff." (Jt. App. at 1352, 1354.) In January 1996, Judge Newblatt denied all other pending motions for injunctive

relief, dissolved the prior injunction he had issued, and forbade Appellant from filing any further requests for injunctive relief as an improper form of collateral attack on the orders of Livingston County Circuit Judge Burress.

The parties filed cross-motions for summary judgment in March 1996. Judge Newblatt denied Appellant's motion for summary judgment, granted Appellees' motion for summary judgment as to Dale Brewer, and denied Appellees' remaining motions for summary judgment. *Dubuc v. Green Oak Township, et al.*, 958 F. Supp. 1231, 1240, 1244 (E.D. Mich. 1997). The court dismissed Appellant's claim based on the Equal Protection Clause, claiming he was a class of one against whom the Township selectively enforced its building codes in retaliation for the exercise of his First Amendment right to sue. *Id.* at 1238 (citing *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056-58 (6th Cir. 1996)). Judge Newblatt also denied Appellees' motion on the issue of claim and issue preclusion. *Id.* at 1243. The court stated that its January 1996 order, which dismissed Appellant's request for injunctive relief as an attempt to collaterally attack various orders of the Livingston County Circuit Court, was based on the fact that the issues of whether Appellant was entitled to a certificate of occupancy, whether defendants acted within their authority, and whether the state court injunctions and sanctions were appropriate were state matters. *Id.* Whether Appellees acted in retaliation of Appellant's exercise of his constitutionally protected rights, on the other hand, was the subject of this suit and "was not addressed in the state court litigation." *Id.* Finally, the court specifically stated that Appellant's remaining claims arose under the First and Fourteenth Amendments for retaliation against him for exercising his First Amendment rights. *Id.* at 1244.

The case was set for trial when Judge Newblatt retired from the bench in August 1997. At a final pre-trial conference, Judge Newblatt had ordered further submissions from the parties as to any legal defense that could be decided without trial. In response to this order, Appellees again raised the

(1978). *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (applying this standard to a case involving § 1983 and § 1988); *see also Riddle v. Manos*, 266 F.3d 542, 547 (6th Cir. 2001); *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986); *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 182 (6th Cir. 1985). A district court cannot engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. *Christianburg*, 434 U.S. at 421-22.

Appellee defends the award, citing *Eastway Construction Corp. v. New York*, in which the court found that the plaintiff's claim was groundless if not frivolous because he had already been unsuccessful on a similar suit in state courts, which should have put him on notice of the groundlessness of the claim. 762 F.2d 243, 252 (2d Cir. 1985). *See Tonti v. Petropoulous*, 656 F.2d 212, 217 (6th Cir. 1981). Appellee also cites the opinion of state Judge Burress in *Dubuc IV* and the concurrence in the Michigan Supreme Court decision denying leave to appeal *Dubuc IV*. Finally, Appellee cites *Coogan v. Cincinnati Bar Association* for the proposition that the Civil Right Act was not meant to be used as a means to collaterally attack state judgments in the federal system. 431 F.2d 1209, 1211 (6th Cir. 1970). Appellant's actions, Appellees assert, were egregious enough to warrant the award of attorney's fees.

The arguments laid out in this opinion demonstrate that the claim preclusion issue was not clear cut. At the very least, the fact that the district court ultimately dismissed the claim based on claim preclusion does not demonstrate that Appellant *knew* when he filed the suit in 1995 that it was frivolous. The first federal district judge, Judge Newblatt, in fact rejected the claim preclusion contention in 1997, had previously issued a preliminary injunction in favor of Appellant, and had set the case for trial. (Jt. App. at 1352, 1915.) It is clear that Appellant has evoked disfavorable comments in the past from numerous judges who have concluded that he files multiple frivolous suits just to harass.

agrees with the district court that the injunction was not a clear victory for Appellant. The injunction was specifically called temporary, and was only issued subject to Appellant complying with seven conditions. (Jt. App. at 1352.) This finding is supported by Judge Newblatt's order dissolving the injunction, in which he states that the injunction was only meant to be temporary and preserve the status quo while Appellant came into compliance. *Id.* at 1358. Appellant's goal in this suit is not to obtain a temporary certificate of occupancy, which the injunction provided, but to seek damages for alleged violations of Appellant's constitutional rights. The district court did not abuse its discretion in denying Appellant interim attorney's fees.

## IX.

On February 26, 2001, the district court granted Appellees' motion for attorney's fees. In an order dated August 28, 2001, the district court adopted the report and recommendation of the magistrate judge and awarded Appellees $136,728.67 in attorney's fees ($63,988.00 to lead counsel, $72,740.67 to Appellee Clevenger). The fee award was based on 42 U.S.C. § 1988, which allows fees to be awarded, at the judge's discretion, to the prevailing party in a § 1983 action. The district court found that Appellant knew his claims, the ones found subject to claim preclusion in this suit, were frivolous after the state trial court's dismissal of those claims in *Dubuc II* was affirmed on appeal on June 13, 1995. Thus, the court awarded Appellees attorney's fees for any activities undertaken to defend this case from June 13, 1995, until the filing of the motion for attorney's fees. (Jt. App. at 3315.)

Such fee awards to defendants are limited to instances of egregious misconduct by a plaintiff, based "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation . . . And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22

issue of claim and issue preclusion, among others. In a memorandum concerning his retirement, Judge Newblatt suggested that the case be deferred until the state cases were resolved, "so that issue and claim preclusion can be ruled upon rationally." (Jt. App. at 3321.)

The case was transferred to Judge Borman on October 7, 1997. In September 1998, the district court below, upon motion by Appellees, stayed the proceedings pending the outcome of the state court litigation. Once the stay was lifted, the district court considered: (1) Appellant's motion for interim attorney's fees, (2) Appellant's motion for leave to file a second amended complaint, (3) Appellees' motion asserting legal defenses, and (4) Appellant's motion to reinstate the Equal Protection claim. *See Dubuc v. Green Oak Township, et al.*, 117 F. Supp. 2d 610 (E.D. Mich. 2000). On August 31, 2000, Judge Borman denied all of Appellant's motions, granted Appellees' motion asserting legal defenses in part, and dismissed the complaint with prejudice as barred by claim preclusion by virtue of the state court's dismissal with prejudice in *Dubuc II*. *Id.* at 625-26. Appellant filed a timely Notice of Appeal.[2]

In September 2000, Appellees filed a motion for attorney's fees pursuant to 42 U.S.C. § 1988 as the prevailing party in the § 1983 suit. On February 26, 2001, the district court granted this motion. The district court awarded Appellees $136,728.67 in attorney's fees on August 28, 2001. Appellant filed a timely Notice of Appeal.

---

[2]Appellees claim that the Notice of Appeal was not timely. Appellant's motion for a rehearing, however, tolled the appeal period, and Appellant filed the Notice of Appeal within 30 days of disposition of this motion. Fed R. App. P. 4(a)(1)(A); *Inge v. Rock Financial Corp.*, 281 F.3d 613, 617-18 (6th Cir. 2002).

## III.

This Court reviews a grant of summary judgment or dismissal *de novo*. *Wilkins v. Jakeway*, 183 F.3d 528, 531-32 (6th Cir. 1999). This standard of review applies to the district court's dismissal based on claim preclusion. *Id.*

The denial of a motion to amend the pleadings is reviewed for an abuse of discretion. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). This standard applies to the denial of Appellant's motion to file a second amended complaint, which was denied because it was unreasonably delayed and would prejudice Appellees. If the denial of the motion to amend is based on it being futile, or solely on the legal conclusion that the amended pleading would not withstand a motion to dismiss, then it is reviewed *de novo*. *Inge v. Rock Financial Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Parry*, 236 F.3d at 306; *Martin v. Association of Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986). Appellant's motion to reinstate the Equal Protection Claim based on subsequent Supreme Court authority was denied because of claim preclusion. The district court denied this motion because, if allowed, the court believed the claim would only be dismissed based on claim preclusion. Thus, the district court's denial is reviewed *de novo*. *Martin*, 801 F.2d at 248.

A trial court's decision regarding an award of attorney's fees is reviewed for an abuse of discretion. *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001); *Cramblit v. Fiske*, 33 F.3d 633, 634 (6th Cir. 1994). This standard applies to both the denial of Appellant's motion for interim attorney's fees and the granting of Appellees' motion for attorney's fees pursuant to 42 U.S.C. § 1988. *Haddix v. Johnson*, 65 F.3d 532, 534 (6th Cir. 1995).

## IV.

The purposes of claim preclusion are to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial

along. *Id.* The district court concluded that there was not "unambiguous" language indicating probable success on the merits for Appellant. *Id.*

The district court then distinguished five cases cited by Appellant in which interim fees were awarded on the basis of a preliminary injunction which *permanently* provided the plaintiff with exactly the relief she was seeking. *See Seaway Drive-In v. Township of Clay*, 791 F.2d 447, 455 (6th Cir. 1986) (awarding fees after final consent decree on state claims related to federal claims); *Rose v. Nebraska*, 748 F.2d 1258, 1260 (8th Cir. 1984) (involving a preliminary injunction which subsequently became moot after the state statute was amended, thus eliminating any chance for the relief to become final so that attorney's fees could be awarded); *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1555 (11th Cir. 1987) (same); *Williams v. Alioto*, 625 F.2d 845, 847 (9th Cir. 1980) (same); *Coalition for Basic Human Needs v. King*, 691 F.2d 597, 598 (1st Cir. 1982) (involving an injunction pending appeal which became moot because the state's budget crisis was solved, precisely the relief the plaintiff was seeking).

Appellant argues that the preliminary injunction, although not affording final relief, gave him substantial relief because he could occupy the building until the injunction was vacated. Once the injunction was vacated, Appellant argues that he obtained final relief using Michigan procedures.[8] This Court

---

[8] Appellant also argues for application of a "catalyst" theory for entitlement to fees, under which Appellant prevails if the lawsuit achieves the desired result through a voluntary change in the defendant's behavior. The district court found that Appellant had not advanced such a theory, but in his brief Appellant claimed he did argue for this theory in a hearing on July 27, 2000. Appellant did not use this term in his original motion for interim attorney's fees. (Jt. App. at 2681.) In any event, the catalyst theory has been clearly rejected as a basis for awarding attorney's fees. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Resources*, 532 U.S. 598, 601-05 (2001); *Chambers v. Ohio Dep't of Human Services*, 273 F.3d 690, 691 (6th Cir. 2001).

### VIII.

Appellant seeks interim attorney's fees based on Judge Newblatt's preliminary injunction issued in November 1994. Section 1988 provides that a judge may award attorney's fees to the "prevailing party" in a § 1983 action. 42 U.S.C. § 1988. There are situations where an interlocutory fee award may be made before final judgment. *See Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (holding that reversal of a directed verdict was not such a situation). This fee is permitted "only when a party has prevailed on the merits of at least some of his claims . . . only in that event has there been determination of the 'substantial rights of the parties.'" *Id.* (quoting the legislative history). With respect to a preliminary injunction, there is only prevailing party status if the injunction represents "an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff." *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988). Thus, injunctive relief of the "procedural" variety, even if there is a finding of likelihood of success on the merits, cannot be the basis for interim attorney's fees. *Id.*

The district court found that Judge Newblatt's injunctive relief was procedural and not an unambiguous indication of probable success on the merits. *Dubuc v. Green Oak Township, et al.*, 117 F. Supp. 2d 610, 619 (E.D. Mich. 2000). The injunction, which ordered the Township to issue a temporary certificate of occupancy to Appellant as long as he complied with seven conditions, could be seen in two lights. *Id.* at 618. Judge Newblatt based the injunction on crediting state officials' testimony over the Township's official because he believed the Township's official was tainted by animus toward Appellant. This could show that Appellant had a likelihood of success on the merits of his retaliation claim. *Id.* On the other hand, given that Appellant had to comply with several conditions in order to get the certificate, the Township was getting what it wanted from Appellant all

resources, prevent inconsistent decisions, encourage reliance on adjudication, and promote comity between the state and federal courts. *Allen v. McCurry*, 449 U.S. 90, 94, 96 (1980). A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. 28 U.S.C. § 1738; *Heyliger v. State University and Community College System*, 126 F.3d 849, 851-52 (6th Cir. 1997). As such, the preclusive effect of previous state court judgments in this case is governed by Michigan law on preclusion.

Before addressing the substance of the claim preclusion issue, we must address the application of the Michigan Court Rules ("MCR"), specifically Rule 2.203(A). There was an amendment to MCR 2.203(A) in 1985, and then another in 1999. The current version of the Rule states: "In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction." MCR 2.203(A) (2002). The version in existence before 1985 also required a pleading against a party to state every claim that the pleader had against that party arising out of the same transaction or occurrence. *See 1985 Staff Comment*, MCR 2.203 (2002). This pre-1985 version, however, contained a waiver rule in subsection (A)(2), providing that failure of a defendant to object to non-joinder of all claims in the first action constituted waiver of this compulsory joinder rule. *Id.* The version in existence between 1985 and 1999, which applies to this case, maintained the waiver rule, but added the following language: "This rule does not affect collateral estoppel or the prohibition against relitigation of a claim under a different theory." *See* MCR 2.203(A)(2) (1998). In other words, the rule was changed in 1985 so that a defendant was not precluded from arguing collateral estoppel in a second suit, even if she failed to object to non-joinder of that claim in the first suit.

Appellant argues that, under pre-1999 Michigan law, Appellees waived any claim preclusion argument by failing to object to non-joinder of claims in *Dubuc II*. Given the 1985 amendment, this argument is only valid if the language exempting "collateral estoppel or the prohibition against relitigation of a claim under a different theory" does not include claim preclusion, the basis of the district court's ruling below.[3]  There is no evidence that Appellant raised this procedural argument at the district court level before the case was dismissed for claim preclusion, even though Appellees had asserted claim preclusion in their affirmative defenses and on a motion for summary judgment.

Issue preclusion is generally referred to as collateral estoppel, whereas claim preclusion is encompassed by *res judicata*.[4]  *See* Black's Law Dictionary at 256, 1312 (7th ed. 1999). The plain language of MCR 2.203(A)(2) suggests that the exemption to the waiver rule was meant to cover collateral estoppel (issue preclusion) and *res judicata* (claim preclusion, or the relitigation of a claim under a different theory). Appellant, however, cites the Staff Comment to the 1999 Amendment, which states that the waiver rule was removed in order "to facilitate the operation of the common law doctrine of *res judicata*."  *Staff Comment to 1999 Amendment*, MCR 2.203 (2002).  This language can be read to suggest that the 1985 exception to the waiver rule had

---

[3] Appellees argued for both claim and issue preclusion, but the district court based its dismissal only on claim preclusion.

[4] *Res judicata* traditionally encompassed both claim and issue preclusion. "The doctrine of *res judicata* includes two separate concepts — issue preclusion and claim preclusion. . . . Claim preclusion or true *res judicata* . . . 'refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because a determination that it should have been advanced in an earlier suit.'" *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999).  Only recently have the terms claim preclusion and issue preclusion been substituted for those of true *res judicata* and collateral estoppel (as well as for the older terms "merger" and "bar").  *See* Black's Law Dictionary at 1312 (7th ed. 1999).

## VII.

Appellant seeks leave to file a second amended complaint to add events occurring between the time of the first amended complaint and August 19, 1997 (when the permanent certificates of occupancy were issued), and to add Township officials as defendants. A party must have leave or consent of the court in order to amend his complaint after a responsive pleading has been filed. Fed. R. Civ. P. 15(a). Leave is freely given, but courts may deny leave to amend when the amendment would be futile or cause undue delay which would result in unfair prejudice to the defendant. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994).  The longer the delay, the less prejudice the opposing party will be required to show. *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994).

The district court found that the delay was substantial, because Appellant admits that the last date of any dispute with the Township was August 19, 1997, more than a year before this action was stayed by the district court. Appellant does not argue that the information only recently came to his attention, nor offer any other excuse for the delay. The district court also found that allowing the amended complaint would prejudice Appellees, because the case was ready for trial before Judge Newblatt retired, and had since only been delayed to await the outcome of the state court proceedings. Adding new claims and defendants would significantly delay resolution of the dispute. *Phelps*, 30 F.3d at 662-63. Such an amendment would also require the defendants to expend significant additional resources, because the new defendants would have to familiarize themselves with the long record in this case, and all defendants would have to conduct discovery related to the after-occurring events alleged in the amendment. Thus, the district court did not abuse its discretion in denying Appellant a second amendment to his complaint.

However, Appellant has not presented sufficient evidence that actions in their *non-official* capacity by either party would raise a colorable § 1983 claim. The Court should not allow Appellant to continue this repetitive litigation simply by finding some municipal official that has not yet been sued, and trying to blame what he claims was systemic group mistreatment of him on that one person individually.

## VI.

Judge Newblatt dismissed Appellant's claim that his right to equal protection of the laws was violated because he was singled out for strict application of the zoning and building codes — that he was a "class of one." Appellant relies on *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), to argue that his Equal Protection theory has now been endorsed by the Supreme Court. The district court found that Appellant "might well be entitled to reinstatement of the claim," but that claim preclusion applied equally to that claim. *Dubuc v. Green Oak Township, et al.*, 117 F. Supp. 2d 610, 626 (E.D. Mich. 2000). In fact, claim preclusion applies with even greater force, because an equal protection claim was actually pled in *Dubuc II*, at least as a violation of Michigan's Constitution. *See Dubuc v. Green Oak Township, et al.*, No. 154510, at *2 (Mich. Ct. App. June 13, 1995) (unpublished opinion); (Jt. App. at 2244.)

The Supreme Court did accept the theory espoused by Appellant in *Village of Willowbrook*: "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000). The viability of this issue rises and falls with resolution of the first issue. Since this Court has determined that claim preclusion applies to the First Amendment claim, we find that claim preclusion also applies to the Equal Protection Claim. Thus, the district court did not err in denying the motion for reinstatement as futile.

helped facilitate collateral estoppel, but had not worked to facilitate *res judicata*. In the Author's Commentary to the 1985-1999 version, however, it was pointed out that the waiver rule itself was meant to apply only to joinder of claims, not theories. *Author's Commentary to Rule 2.203*, § 2.203.6, MCR 2.203 (1998). Thus, "one must raise all theories in support of a given claim in a given action or lose them. A different result would put any defendant in an untenable position: either he or she would have to object to non 'joinder' of theories — *i.e.,* suggest further theories of recovery to the opponent — or suffer successive suits on the same claim or cause of action, as long as different theories were alleged." *Id.* This commentary explains the language of the rule, "or the prohibition against relitigation of a claim under a different theory." In this case, Appellees' argument is that Appellant is trying to raise the same claim now as in *Dubuc II*, only under a different theory. In order to better understand this Michigan court rule, we turn to Michigan case law which specifically applies MCR 2.203 or broadly discusses the doctrine of *res judicata* in Michigan.[5]

Appellant cites *Rogers v. Colonial Savings & Loan*, which upheld the finding that a defendant waived the right to argue *res judicata* by not raising non-joinder in the first trial. 275 N.W.2d 499, 504 (Mich. 1979). *See Ross v. Onyx Oil & Gas Corp.*, 341 N.W.2d 783, 787 (Mich. Ct. App. 1983). This case is inapplicable, however, because it was decided under the pre-1985 version of the Rule, which did not contain the language excepting collateral estoppel. *See Kelley v. Heppler*,

---

[5]There is additional commentary to Rule 2.203 which warrants discussion. In this case, Appellant made a motion to add the First Amendment claim in *Dubuc II*, which arguably was denied when the case was dismissed while that motion was pending. The 1985 Staff Comments state: "In addition, unless the court specifies otherwise, the rules regarding compulsory joinder do not apply if the court denies a motion to amend to add such a claim." *1985 Staff Comments*, Michigan Rules of Court, Rule 2.203 (2002). This language, however, specifically refers to part (E) of Rule 2.203, which deals with timing for filing *cross-claims or counterclaims*. Thus, this comment is not relevant to this case.

1997 WL 33347916, at *2 (Mich. Ct. App. May 30, 1997) (unpublished opinion). Nevertheless, it contains some enlightening discussion of the initial purpose behind the Rule. The court notes that it was meant to codify existing rules against splitting causes of action. *Id.* at 503. The court then noted that the Rule (which at that time had the waiver provision but not the exception) had no impact on *res judicata* as to claims actually litigated, and also no impact on the doctrine of collateral estoppel.[6] *Id.* at 503 n.4. Thus, before the 1985 amendment, the Michigan Supreme Court had held that the waiver provision did not affect collateral estoppel. The fact that the 1985 amendment specifically excepts not only collateral estoppel but also the "relitigation of a claim under a different theory" suggests it was meant to apply to claim preclusion as well as issue preclusion.

Another applicable case is *Jones v. State Farm Mutual Automobile Ins. Co.*, in which the court discussed MCR 2.203 in a footnote. 509 N.W.2d 829, 836 n.5 (Mich. Ct. App. 1994). The court ultimately applied Kentucky's court rules, but a Michigan appellate court's reading of Michigan court rules is nevertheless enlightening. The footnote states: "In addition, even if we were to apply Michigan's rule to this matter, plaintiff's argument would fail. MCR 2.203(A)(2) provides that the waiver rule 'does not affect collateral estoppel or the prohibition against relitigation of a claim under a different theory.' Because we have already held that plaintiff's Michigan action is 'a claim under a different theory,' MCR 2.203(A)(2) would not prevent defendant from raising the defense that plaintiff has split his cause of action." *Id.* at 836 n.5. The holding of the *Jones* court was that the claim was barred by **res judicata**, not by collateral estoppel. *Id.* at 835. Thus, a Michigan court discussing the same

---

[6]The fact that plaintiff made a motion to amend his complaint in *Dubuc II* to add a First Amendment claim, and that motion was still pending when the case was dismissed, could be seen as a denial of that motion. Thus, the claim could be considered to have been "actually litigated" and the waiver provision of the Rule would not apply at all.

Appellant also argues that the purpose of claim preclusion is the early disposition of a lawsuit, so the fact that Appellee waited five years before arguing claim preclusion means it was untimely. *See Bodenhamer v. Architectural Research Corp.*, 106 F.R.D. 521, 524 (E.D. Mich. 1985). The wait, however, was because of amendments and motions by Appellant, as well as the retirement of a judge, and not stall tactics by Appellees. Additionally, the argument was first raised in March 22, 1993, in Appellees' answer and affirmative defenses. (Jt. App. at 927-28.)

Finally, applying the last element of the Michigan preclusion test, the district court held that the same parties were involved in both suits. The plaintiff in both suits was Dennis Dubuc. Thus, the party against whom claim preclusion is being asserted was present in both suits. The Defendants in *Dubuc II* were the Township, Ron Niece ("Niece"), Gordon Appleton ("Appleton"), and Dale Brewer ("Brewer"). The first and fourth are defendants-appellees in this case and the second and third are not involved in this case. The two defendants-appellees in this case not present in *Dubuc II* are Raymond Clevenger ("Clevenger") and the Estate of Michael Vallie ("Vallie"). Appellant argues that, even if the municipality has claim preclusion, individuals sued in their individual capacities do not. *See Perry v. Croucher*, 165 F.3d 28, at *7 (6th Cir. Aug. 31, 1998) (unpublished opinion).

Vallie is the successor in office to Appleton, both of whom were sued for their alleged malfeasance in office by mistreating Appellant. This created sufficient privity between Vallie and Appleton. *See Crawford v. Chabot*, 202 F.R.D. 223, 227-28 (W.D. Mich. 1998). In *Dubuc IV*, Appellant sued Vallie in his individual and official capacity, and Clevenger was later named as a defendant as well. *Dubuc v. Green Oak Township, et al.*, 1999 Mich. App. LEXIS 2105 (Mich. Ct. App. Jan. 5, 1999) (unpublished opinion); (Jt. App. at 1639, 2703.) Thus, strict claim preclusion does not apply to Vallie or Clevenger in their *individual* capacity only.

or even if the victim does not prevail, then *res judicata* would not affect access to the courts. When the alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit, however, the victim is obliged to amend his or her initial complaint to add these new allegations. *See Cox v. Tennessee Valley Authority*, 16 F.3d 1218, at *4 (6th Cir. Feb. 10, 1994) (unpublished opinion) (holding that, when a plaintiff becomes aware of additional facts or theories in the process of discovery, she should move to amend her complaint or face claim preclusion in subsequent suits). *Cf. Sherman v. Ludington*, 968 F.2d 1216, at *8 (6th Cir. July 7, 1992) (unpublished opinion) (holding that federal *res judicata* applied to a claim, which the plaintiff had unsuccessfully attempted to add by amending his complaint in the previous suit, "because plaintiff possessed the facts and evidence and had the opportunity to litigate the claims at an earlier date"); *Nathan v. Rowan*, 651 F.2d 1223, 1228 n.8 (6th Cir. 1981) (citing *Cromwell v. County of Sac*, 94 U.S. 351 (1877)) ("Nevertheless, the doctrine of *res judicata* necessarily applies to all matters, including new or different legal theories against the same parties, that 'might have been offered in the prior action.['] "); *Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999) (holding that *res judicata* bars "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not"). The doctrine of *res judicata* would become meaningless if a party could continue to relitigate the same issue — whether the defendant was acting in retaliation of the plaintiff's exercise of constitutional rights — by merely positing a few additional facts that occurred after the initial suit. *See Crawford v. Chabot*, 202 F.R.D. 223, 227 n.1 (W.D. Mich. 1998). When, as here, it is obvious that the alleged ongoing retaliation is actually the defendant continuing on the same course of conduct, which has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim.

version of MCR 2.203 applicable to this case found that the waiver provision did not apply to either collateral estoppel or *res judicata*.

This view is reinforced by the Michigan Court of Appeals in *Kelley v. Heppler*, which also involved application of Rule 2.203 before the 1999 amendment. 1997 WL 33347916 (Mich. Ct. App. May 30, 1997) (unpublished opinion). The court specifically rejected the plaintiff's argument that the defendant was barred from asserting *res judicata* (not collateral estoppel) because he had failed to object to non-joinder. *Id.* at *2. Finally, the court called plaintiff's reliance on *Rogers* "misplaced because that case applied an outdated rule which did not contain the above-quoted language." *Id.*

Applying the pre-1985 version of the Rule, the court in *Purification Systems, Inc. v. Mastan Company* also offered some helpful analysis. 198 N.W.2d 807 (Mich. Ct. App. 1972). In determining whether *res judicata* (again, not collateral estoppel) applied, the court noted that the plaintiff was to blame for not joining the claim in the previous suit and the defendant was to blame for not objecting to non-joinder in the previous suit. *Id.* at 810. Nevertheless, the court held that *res judicata* would bar the second suit, despite the failure to object to non-joinder, because "the only alternative for the defendant is in effect to plead plaintiff's case for it." *Id.* Thus, Michigan courts have even been willing to overlook a defendant's failure to object to non-joinder when it is apparent that *res judicata* should apply. *See Crawford v. Chabot*, 202 F.R.D. 223, 227 (W.D. Mich. 1998) (finding plaintiff's claim barred by *res judicata* without addressing whether the defendant objected to non-joinder or not).

Finally, this reading of MCR 2.203 is consistent with the repeated assertion by Michigan courts that they employ broad application of claim preclusion. *See Coniglio v. Wyoming Valley Fire Ins. Co.*, 59 N.W.2d 74, 78 (Mich. 1953) (noting that Michigan strictly enforces the "rule of justice" against splitting causes of action in order to prevent vexation and

expense to a defendant); *Bergeron v. Busch*, 579 N.W.2d 124, 126 (Mich. Ct. App. 1998) ("Michigan has adopted a broad application of *res judicata* that bars claims arising out of the same transaction that plaintiff could have brought but did not."); *Eyde v. Charter Township of Meridian*, 324 N.W.2d 775, 777 (Mich. Ct. App. 1982) (stating that the Michigan Supreme Court has adopted the broad definition of *res judicata*); *Baker v. Golematis*, 169 N.W.2d 521, 522 (Mich. Ct. App. 1969) ("Moreover, the law favors the combination of related claims in one action and penalizes the failure to join all claims arising out of the same transaction or occurrence."). MCR 2.203 does not bar Appellees from asserting claim preclusion in this case.

## V.

The district court dismissed the complaint, finding that the state court's decision in *Dubuc II* barred this action under claim preclusion. *Dubuc v. Green Oak Township, et al.*, 117 F. Supp. 2d 610, 625 (E.D. Mich. 2000). Prior to this dismissal, the one surviving claim of Appellant was that Appellees violated 42 U.S.C. § 1983 by retaliating against him for prior exercises of his First Amendment rights to speak to the press and to petition the courts. The district court found that in *Dubuc II* (*Dubuc v. Green Oak Township, Ron Niece, Gordon Appleton, and Dale Brewer*, No. 88-9402-NO), Appellant's second amended complaint alleged a violation of 42 U.S.C. § 1983, in that Appellees denied Appellant procedural and substantive due process of law and equal protection of the laws in violation of the Fifth and Fourteenth Amendments by blocking Appellant's attempts to develop his land. The six other counts alleged violations of the Michigan Constitution and various state laws based on the same conduct. As noted, this case was dismissed when Appellant failed to pay sanctions issued for failing to appear at a status conference and hearing.

In Michigan, claim preclusion has the following elements: (1) the first action must have resulted in a decision on the

pay the sanctions, his case was dismissed with prejudice.[7] This effort by Appellant to try to add a First Amendment claim in *Dubuc II* demonstrates that the same essential facts were the basis of both claims; Appellant was just labeling them with different causes of action. In other words, Appellant could have raised his First Amendment claims in *Dubuc II*. The fact that he tried and never was able to do so does not provide support for his being able to reraise this claim in federal court. *See Maiden v. Rozwood*, 215 F.3d 1327, at *3 (6th Cir. May 23, 2000) (unpublished opinion) (rejecting the plaintiff's claim that *res judicata* should not apply to her claim because she had sought to amend her complaint in the case to add the claim but the motion was denied). *But see Martin v. Deuchler*, 319 N.W.2d 352, 383 (Mich. Ct. App. 1982) (holding that the denial of a motion to amend is entitled to *res judicata* when it is based on futility, but implying that denial of a motion to amend for other reasons should be treated differently). The state suit was dismissed on the merits based on Appellant's actions in court, and Appellees should not be punished just because the case was dismissed before the motion to add another claim could be ruled on. More importantly, the present suit was filed *before* Appellant knew that *Dubuc II* would be dismissed and *before* he knew that his motion to add a First Amendment claim in *Dubuc II* would not be ruled on. Appellant was seeking to raise this same issue in collateral courts at the same time.

This analysis, of course, should not be read to preclude the victim of ongoing retaliation from filing multiple suits. If retaliation persists after the victim prevails in an initial suit,

---

[7]The Michigan Court of Appeals, in affirming the dismissal of *Dubuc II*, also noted that "Plaintiff sought a third amended complaint to assert claims against the Township under the First Amendment, U.S. Const., Amend. I. The court never ruled on this motion because it had dismissed the case." (Jt. App. at 2250) (*Dubuc v. Green Oak Township, et al.*, No. 154510, at *3 n. 4 (Mich. Ct. App. June 13, 1995) (unpublished opinion)).

*Cuyahoga Valley Joint Vocational School District*, 926 F.2d 505, 510-11 (6th Cir. 1991) (holding that proof of a continuing violation of civil rights can overcome a motion for summary judgment because some of the actions alleged would be time-barred); *Black Law Enforcement Officers Assoc. v. City of Akron*, 824 F.2d 475, 483 (6th Cir. 1987) (holding that the statute of limitations did not bar a plaintiff from offering proof of a pattern and practice of discrimination). Appellant asserts that this continuing violation theory should be extended to allow a claim to survive claim preclusion. The only case that lends any credence to this theory is *Herendeen v. Michigan State Police*, 39 F. Supp. 2d 899 (W.D. Mich. 1999). *Herendeen*, however, merely stands for the proposition that *evidence* that might have been used in a prior lawsuit is not barred by claim preclusion from being used in a subsequent suit raising a new claim. *Id.* at 907. In this case, the district court found that Appellant's entire claim, not just some of the evidence, was barred by claim preclusion.

Even if there were some alleged new facts that arose after the filing of *Dubuc II*, it does not preclude application of *res judicata*. The key issue is whether Appellant could have amended his complaint in *Dubuc II* to include these new manifestations of alleged retaliation. Appellant, in fact, tried to add a § 1983 First Amendment claim in *Dubuc II*, but the motion was never ruled on because the case was dismissed with prejudice. *Dubuc v. Green Oak Township, et al.*, No. 154510, at *2 n.4 (Mich. Ct. App. June 13, 1995) (unpublished opinion); (Jt. App. at 2244.) When Judge Burress on January 10, 1992, assessed costs against Appellant for failing to appear at scheduled court appearances, he specifically set a hearing for January 15, 1992, in order to determine the parties' remaining pending motions. (Jt. App. at 2253-54.) The case was then dismissed on March 12, 1992. There is no record that there ever was a hearing on the pending motions, but presumably any hearing was delayed until Appellant paid the sanctions. Since Appellant never did

merits; (2) the issues must have been resolved in the first action, either because they were actually litigated or because they might have been raised in the first action through reasonable diligence of the parties; and (3) both actions must be between the same parties, or their privies. *Sloan v. City of Madison Heights*, 389 N.W.2d 418, 422 (Mich. 1986). *See Katt v. Dykhouse*, 983 F.2d 690, 693 (6th Cir. 1992). This Court agrees with the district court's application of the first element of the Michigan preclusion test: a dismissal with prejudice for failure to comply with a court order amounts to an adjudication on the merits. *Wilson v. Knight-Ridder Newspapers, Inc.*, 475 N.W.2d 388, 389 (Mich. Ct. App. 1991); Fed. R. Civ. P. 41(b).

Next, applying the second element for preclusion in Michigan, the district court found that the claims in this complaint could and should have been raised in *Dubuc II*. *See Perry v. Croucher*, 165 F.3d 28, at *4 (6th Cir. Aug. 31, 1998) (unpublished opinion) (holding that the issue with claim preclusion "is not whether the court heard this claim, the issue is whether the court could have heard the claim"). The essence of Appellant's claim, according to the district court, is that from 1985 to 1997 the Township and its officials continually retaliated against him for speaking to the press and petitioning the courts for redress. This retaliation consistently related to the development of his property, whether it be denial of a certificate for occupancy or refusal to allow a lot split. The test in Michigan is whether the same facts or evidence are essential to the maintenance of the two actions, not a comparison of the grounds for relief. *Jones v. State Farm Mutual Automobile Insur. Co.*, 509 N.W.2d 829, 834 (Mich. Ct. App. 1994). That the same facts are present in the state and federal cases here is evidenced by the fact that Appellant has continually updated his complaints in both the state and federal courts to allege new instances of this action. Thus, the major issue in the case at bar is at what point later-occurring allegations give rise to new claims that could not have been raised in the earlier proceeding.

The district court emphasized that a plaintiff should move to include new claims that he becomes aware of in the course of discovery for a lawsuit, or risk having the doctrine of claim preclusion apply to the omitted claim. *Dubuc*, 117 F. Supp. 2d at 625 (citing *Cox v. Tennessee Valley Auth.*, 16 F.3d 1218, at *4 (6th Cir. Feb. 10, 1994) (unpublished opinion)). According to the district court, Appellant could have added the lot-split claim to his claims in *Dubuc II*. The fact that *Dubuc II* involved certificates of occupancy while the federal suit involved a lot-split, the court continued, "is not a crucial difference" because otherwise Appellant would have to be allowed to file a new suit after each episode in what he claims is an ongoing effort to retaliate against him. To allow so many suits, the district court held, would defeat the core policy underlying the doctrine of claim preclusion. *See Crawford v. Chabot*, 202 F.R.D. 223, 227 n.1 (W.D. Mich. 1998) (holding that *res judicata* applied to subsequent conduct that "is part and parcel of the earlier incidents forming the basis of plaintiff's complaint"). How the Appellees' retaliatory animus manifested itself is not the crucial element of Appellant's claim; rather, it is the retaliatory animus itself. Thus, the district court held, this action involved claims that could have been raised in *Dubuc II*.

Appellant agrees that there is a recurring issue of alleged wrongdoing permeating both of these suits, but argues that this federal lawsuit is based on later misconduct and a different set of facts than *Dubuc II*. This is not a case where there were merely later consequences, Appellant continues, but one in which there were new facts and events. As authority, Appellant cites *Ditmore v. Michalik*, which involved a land dispute in which the court rejected the defendant's argument that a 1963 case involved the same legal issue of whether neighbors had any legal rights to a parcel of land, because the earlier court did not clearly adjudicate that issue. 625 N.W.2d 462, 466-67 (Mich. Ct. App. 2001). The court held that it would not bar the second action because it was unclear why the earlier court had held

as it did. *Id.* In this case, it is quite clear why the *Dubuc II* court held as it did — failure to pay sanctions for absences from court proceedings. In *Plaza Investment Co. v. Abel*, the court held that a tenant, who had previously received damages for breach of a covenant to repair, was not barred from bringing a second suit seeking damages suffered from a continuing breach since the last recovery. 153 N.W.2d 379, 383 (Mich. Ct. App. 1967). Here, Appellant is not seeking damages that have occurred since another suit in which he received damages, because he has not received damages in a previous § 1983 suit. In fact, the alleged damages from denial of the lot-split occurred, and this suit was filed, before *Dubuc II* was finally adjudicated. Thus, Appellant was in a different situation than the tenant in *Plaza* because he could have added these claims to his complaint in *Dubuc II*.

Appellant also cites *Putnam v. City of Cookeville*, which involved First Amendment claims by the publisher of a tabloid and web page against a city refusing to allow him access to certain records. 221 F.3d 834 (6th Cir. 2000). The defendants argued that an earlier suit between the same parties, in which defendants' motion for summary judgment was granted, acted to preclude the subsequent suit. The court rejected this claim because the factual circumstances and events differed, and because summary judgment in the earlier suit was actually not granted until after it had been granted in the second suit. *Id.* at 839, 840 n.3. In contrast, *Dubuc II* had been finally adjudicated before Appellant's complaint in this case was dismissed. Other cases cited by Appellant are similarly distinguishable. *See Said v. Rouge Steel Co.*, 530 N.W.2d 765, 770 (Mich. Ct. App. 1995) (remanding the case because it was unclear whether the claim should be barred by *res judicata*).

Appellant cites several cases employing a continuing violation theory to allow in evidence that would otherwise be *time-barred*. *See United Air Line, Inc. v. Evans*, 431 U.S. 553, 557 (1977) (involving a claim of continuing violation of Title VII in order to avoid the statute of limitations); *Hull v.*